W. IRVING FISHER ET AL., APPELLEES, V. OLIVER W. FISHER ET AL., APPELLANTS.

FILED NOVEMBER 21, 1907.  No. 14,962.

1. **Wills: DEVISE: CONDITION PRECEDENT.** A devise in a will in the following language: "In case my said son Oliver shall keep, care for and support me during the remainder of my life, as a consideration therefor, I give, devise and bequeath to my said son Oliver the south half, * * * but if my said son shall fail to keep, care for and support me during all of the remainder of my life, said south half * * * shall become a part of the residue and remainder of my estate"—*held* to be a devise upon a condition precedent and requiring substantial performance to vest title in. the devisee.

2. ———: CONSTRUCTION. A will should, if possible, be construed so as to give effect to each and every part thereof.

3. ———: WORDS OF LIMITATION. Unless a different intention is apparent, words of limitation in a devise will be given their usual and ordinary meaning.

4. ———: CONDITION PRECEDENT: WAIVER. As a general rule, waiver of performance of a condition precedent to the vesting of a devise must be shown either from the will or a codicil.

5. ———: ———: NONPERFORMANCE. Nonperformance of a condition

13

that must be performed during the life of the testator is not excused by devisee's ignorance of the condition.

6. **Evidence** examined, and *held* insufficient to show substantial performance of the conditions of the devise.

7. **Partition**: TRIAL. In an action of partition, where the defendant answers, claiming title in himself, and waives a jury and participates in a trial of all the issues to the court without objection, he will be held to have waived any right he may have had to have the title first determined.

8. ———: WILLS: JURISDICTION. The district court has jurisdiction in an action of partition to construe a clause in a will determining the rights of the parties to the land under the will.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

W. P. *Warner,* E. R. *Bevens* and *Shull, Farnsworth &* *Sammis,* for appellants.

*Wright, Call & Sargent* and *John V. Pearson, contra.*

GOOD, C.

James Oscar Fisher, a resident of Dakota county, Nebraska, died testate, leaving him surviving seven children. This action was instituted by six of said children and their spouses against the remaining child and his spouse to partition 160 acres of land in said county disposed of by the will of said testator. There is no controversy, except as to one eighty-acre tract. The plaintiffs contend that the 80 acres in controversy were devised to all the children in equal shares under the tenth, or residuary, clause of the will. The defendant answered, and claimed the 80 acres in controversy in fee under the sixth clause of the will, wherein it was devised to the defendant Oliver W. Fisher upon certain conditions, performance of which was alleged by the defendants. Plaintiffs had judgment for partition, and the defendants appeal.

The controversy in this case largely hinges upon the interpretation to be given to the sixth paragraph of the will of James Oscar Fisher, and particularly to that

portion of said paragraph which relates to the 80 acres in controversy. The rule is general that in interpreting or construing a will the great object is to ascertain, if possible, the testator's meaning and intention, and, if lawful, to give effect thereto. In arriving at an understanding of the intention of the testator and the meaning of the language used in his will, it is the duty of the court to take into consideration all the facts and circumstances surrounding the testator at the time of the making of the will. In order, therefore, to get a clear understanding of the conclusions, which will hereafter be stated, we will first set forth the salient facts as disclosed by the record.

James Oscar Fisher was 74 years of age at the time of his death, on October 7, 1902. The will was made in September, 1900. Testator died possessed of 480 acres of land, and of personal property of the value of about $9,000. He had resided upon the land in Dakota county for a great many years previous to his death. His wife died in 1889. His family consisted of four daughters and three sons, Oliver being the youngest child, and 11 years of age at the death of his mother. The daughters in their turn, after the death of their mother, took charge of the household affairs of their father until they were all married. Then one of the married daughters with her husband occupied the home jointly with the father until a few months before his death, when the youngest son, Oliver, was married, and he and his wife made their home with his father, she having the management of the household affairs. The testator was a man of more than ordinary intelligence, and had been admitted to the bar. He was a man of robust health until the year 1898, when he suffered a stroke of paralysis, from which he was confined to his bed for a short time, and was thereafter afflicted with the disease called "creeping paralysis." From the effects of his illness he became slightly crippled, and somewhat enfeebled, and performed no active work after the year 1898. It appears that he had several slight "strokes" or attacks, from time to time, which temporarily disabled

him. After his first stroke of paralysis he was sensitive to the extremes of temperature. In cold weather he sometimes became chilled and benumbed, and his limbs required rubbing to restore the circulation. In hot weather he sometimes was so affected by the heat that he had to be assisted to a chair or other place of repose. In the main, however, his health was good, and he was able to go about alone; hitched up and unhitched his horse; frequently drove to Dakota City, and sometimes to Sioux City, apparently on an average of two or three times a week; frequently visited his friends in the neighborhood unaccompanied, and made trips by railway to visit his children; and at one time went to Hot Springs for treatment, staying several weeks and being unattended by any member of his family.

Oliver W. Fisher during all of his life had lived and made his home with his father, and, after the death of his mother, occupied the same room and slept with his father until May, 1902, when Oliver was married. He personally attended to the wants and needs of his father, particularly at night, rubbing his limbs when he became cold, assisting his father at times in changing his clothing, particularly his underclothing and shirts, and in lacing his shoes, and on a few occasions, for a day or two at a time, the father was unable to control the action of his bowels and kidneys, and Oliver attended to his needs and wants in that respect. Generally he hitched up the horse for his father and afforded him such care as would be expected from a dutiful son.

In September, 1900, while the father was ill and confined to his bed, he made a will, which was drawn by Judge Evans of Dakota City. Twelve days later he made another will, also drawn by Judge Evans, which was admitted to probate, and now requires interpretation in this action. By the provisions of this will he devised 80 acres to each of his three sons, and an additional 80 acres conditionally to Oliver. Another 80 was devised to two daughters jointly, and still another 80 to all his children

in equal shares. Substantial bequests were made to each of his children. The sixth clause of his will is in the following language: "Sixth, I give, devise and bequeath to my beloved son, Oliver W. Fisher, all my household furniture that shall remain after that portion thereof heretofore bequeathed to my said daughter Mary shall have been set aside and allotted to her. I also give, devise and bequeath to my said son Oliver my horse called 'Jim' and my mare called 'Coally' and the colt now running at her side; also the north half of the northeast quarter of section fourteen (14), township twenty-eight (28), of range eight (8) east, in Dakota county, state of Nebraska, and in case my said son Oliver shall keep, care for and support me during the remainder of my life, as a consideration therefor, I give, devise and bequeath to my said son Oliver the south half of the southeast quarter of section eleven (11), township twenty-eight (28) of range eight (8) east, in said Dakota county, but if my said son shall fail to keep, care for and support me during all of the remainder of my life, said south half of the southeast quarter of eleven (11) shall become a part of the residue and remainder of my estate and be disposed of as hereinafter provided, and my son shall have no claim against my estate for such care, keeping and support which shall not be fully paid for by the other portions of this bequest and devise." From this it will be observed that the south half of the southeast quarter of section eleven is devised to Oliver upon a condition that he should "keep, care for and support" the testator during the remainder of his life, and that, if Oliver should fail to "keep, care for and support" the testator during all the remainder of his life, then said tract of land should become a part of the residue of the estate, which was disposed of by the tenth clause of the will in equal shares to all his children. Under the sixth clause of the will Oliver was required to perform the conditions imposed during the lifetime of the testator. Performance was required before the vesting of the title. The devise was upon a condition precedent, and, unless there

was at least substantial performance of the conditions, no title to this eighty-acre tract ever vested in Oliver. *Burdis v. Burdis*, 70 Am. St. Rep. 825 (96 Va. 81), and note thereto; *Martin v. Ballou*, 13 Barb. (N. Y.) 122; *Mills v. Newberry*, 112 Ill. 123; note to *Nunnery v. Carter*, 78 Am. Dec. 231 (58 N. Car. 370); *Merrill v. Wisconsin Female College*, 74 Wis. 415.

Defendants contend that literal performance of the condition was never intended by the testator. In support of this contention they rely upon the fact that the testator never informed Oliver of the condition upon which the land was devised—and, in fact, it appears that none of the children had any knowledge of the contents of the will until after the death of their father—also, the fact that the testator, at the time of the making of the will, was possessed of ample property and had an income of about $1,200 to $1,500 annually, and that Oliver, at the time of the making of the will, was a single man, possessed of no property of any consequence. And it is urged that the testator had in mind, by the use of the words "keep, care for and support," such personal attention as Oliver had been accustomed to bestow upon his father at that time. Upon the other hand, we must consider that the testator was a man of more than ordinary intelligence, and had been admitted to the bar, and presumably had knowledge of the meaning that is usually attached to the words contained in the will; also, the fact that the will was re-drafted, and that it was drawn by an able and experienced lawyer, and that it was drawn only 12 days after the making of a previous will, showing that the testator had used care and caution in drawing his will and was desirous of having it exactly according to his wishes. To construe the will as contended for by the defendants would be to deprive the words "keep" and "support" of any use or effect in the will. It would be practically changing the clause so as to read, "to care for," or "to take care of me." It is a cardinal principle in the interpretation of wills that effect should be given to each and every portion thereof, if

possible, and, if it can be so construed as to give effect to
all the language of the testator, such interpretation should
prevail. If any significance is to be attached to the fact
that the testator never informed Oliver of the provisions
of the will, and that he never made any demand or request
of Oliver for actual keep or support, we think it tends to
support the view that the testator did not desire fulfill-
ment of the condition, but preferred to let the 80 acres in
question go under the residuary clause of the will. We
think it probable that, at the time he drew the will, being
confined to his bed and being a man of intelligence and
knowing the nature of the disease with which he was
afflicted, he probably reasoned that he was likely to be-
come a helpless invalid, unable to manage his property or
direct his affairs, and possibly unable to keep and sup-
port himself. With that contingency in view, he may
have made provisions as therein stated as a consideration
for the care, keep and support, which he anticipated would
be furnished by Oliver; but, recovering from his attack
within a few days and finding that his health permitted
his managing and directing his own affairs, he was con-
tent to support and keep himself and let the property go
to all his children in equal shares. It is evident that dur-
ing the two years after the making of the will he was
fully aware of the conditions, and knew that Oliver was
not literally fulfilling them, and that he never took any
steps to change or alter the will, presumably because he
was satisfied to have the conditions not fulfilled and the
property go to all the children.

The defendants contend that there was substantial per-
formance of the conditions, because Oliver cared for and
attended to the personal wants of the father and furnished
him such things in the way of support as the father re-
quested. In that behalf it may be stated that, at the time
the will was made, one of the testator's daughters and her
husband were living with and keeping house for the tes-
tator; that testator was furnishing, or supplying, the
necessaries for the table, the fuel, and his clothing; that

Oliver furnished no part thereof, unless it was some occasional article of no consequence; that Oliver and the hired man were paying board to his father, and continued to do so until Oliver was married; that after Oliver was married he and his wife kept house, and Oliver and his father shared the expenses in about equal proportions for maintaining the household, which consisted of the father, Oliver, his wife, and the hired man. It will be seen that, although the father was only one-fourth of the number of the household, he was paying one-half of the expenses. At no time did Oliver furnish any clothing, or raiment, for the father. He did on a few occasions purchase medicines for his father, and paid for the nurse during the last illness of the testator, which lasted 11 days. Under these circumstances, we think Oliver's attempts to prove performance of the conditions fall far short of showing a substantial performance, and wholly fail to comply with the requirements imposed by the father's will.

Defendants further contend that the testator had a right to, and did, waive performance. It is doubtless true that the testator had a right to waive a performance of the conditions, but the only way that the waiver can be shown is by the will itself. We are aware that, in some instances, waiver of the conditions precedent has been held to occur. *Clarke v. Berkeley*, 2 Vern. (Eng.) 719, was a case wherein the testator devised real estate in trust for the benefit of a daughter until her death or marriage, and in case she married with the consent of two of the trustees and her mother, then to convey unto her and her heirs, or to such person as she should appoint, but, if she died before marriage or married without such consent, then the trustees were to convey the lands to other uses. Subsequently to the making of the will the daughter, with her father's consent, married. After his death it was insisted that she could not take the property by the will, because the devise was upon a condition precedent that she should marry with the consent of the trustees and her mother, and that no such consent was had or could be had. It was

held that the marriage did not work a revocation of the devise, and that the conditions in the will that she should marry with the consent of the trustees and her mother were dispensed with by having the consent of the testator, which was more to be regarded than the consent of the trustees. In this case it is clear that the testator desired that his daughter should not contract an unfortunate marriage, and, anticipating that the marriage would not occur until after his death, he took steps to prevent an unfortunate marriage by requiring the consent of certain persons appointed by him. But, when he had the opportunity to, and did, exercise that supervision over the marriage of his daughter, he had accomplished all that could be accomplished through the agency of others. The object and the intention of his will had been complied with. Substantial compliance with the conditions had taken place previous to his death. But we cannot say, from anything that is in the will in the case at bar, that there was any intention or purpose of the testator to waive compliance with the conditions. As was well said in the case of *Bryan v. Bigelow*, 77 Conn. 604, 107 Am. St. Rep. 64: "The intent must in every case be drawn from the will, but never the will from the intent. 'So far as concerns the construction of a will, the question always is, not what the testator meant to say, but what is meant by what he did say.' "—citing *Weed v. Scofield*, 73 Conn. 670.

Defendants contend that Oliver's ignorance of the provisions of the will excuses nonperformance. It is admitted that the general rule is that ignorance of a condition precedent in a will does not excuse its nonperformance, but defendants contend that this has no application to an heir of a testator, who is devisee of an estate upon condition. This doctrine has sometimes been given effect to prevent an heir from being deprived of any part of his inheritance. In this case it will be observed that the testator had already provided for Oliver by an unconditional devise of 80 acres, and, in fact, the evidence discloses that the value of the property devised unconditionally to Oliver

was greater than that devised to any of the other children. We think the general weight of authority is to the effect that nonperformance of a condition precedent, or a condition that must be performed during the life of the testator, is not excused by ignorance of it. In the case of *Brennan v. Brennan*, 185 Mass. 560, the clause in the will construed was: "All the rest, residue and remainder of my property, both real, personal and mixed, I give, devise and bequeath to Francis J. Brennan to him and his heirs forever, provided that he shall take care of me and look after me while I live." The court held this to be a condition precedent, and that no estate vested in the devisee because he had not complied with the condition. The fact that he had no knowledge of the conditions until after the death of the testator was held not to change the rule. We reach the conclusion, therefore, that the 80 acres in controversy were devised upon a condition precedent which was never performed, and that no title ever vested in Oliver, and that the eighty-acre tract was therefore disposed of under the tenth, or residuary, clause of the will, by which it was bestowed in equal shares upon all the children of the testator.

Defendants further contend that the district court had no jurisdiction to hear and adjudicate the matters here in controversy, claiming that the action of partition will not lie by one out of possession against one in possession claiming title to the land. It is sufficient answer to say that neither the pleadings nor the evidence show that the defendants were in possession, and it is rather inferable that the possession of the premises was in the executors of the will. But whether or not they were in or out of possession, we think, makes no difference under the circumstances. Whatever right defendants might have had to have the right of title tried first was waived by the defendants asking for affirmative relief from the court, waiving a jury, and participating without objection in a trial of all the issues to the court. *Schimpf v. Rhodewald*, 62 Neb. 105; *Schick v. Whitcomb*, 68 Neb. 784.

The defendants next contend that the county court had original jurisdiction to hear and determine the questions at issue, and that the district court was without jurisdiction, except on appeal. In support of this contention they rely upon *Boales v. Ferguson*, 55 Neb. 565, *Reischick v. Rieger*, 68 Neb. 348, and *Youngson v. Bond*, 69 Neb. 356. We think a careful reading of these cases does not justify the inference drawn by the defendants. It is the rule, doubtless, that the county court has jurisdiction in an action by the executor to construe a will for the purpose of affording information to the executor for the administration of the estate, but the principal action here is to partition the land. The construction of the will is only incidental to the main relief sought. It is quite clear that the county court could not have jurisdiction in an action to partition the land, and, we think, it is likewise clear that it would not have jurisdiction of an action for the construction of a will between two or more heirs or devisees claiming title to the same tract of land. In *Youngson v. Bond, supra*, the commissioner writing the opinion quotes with approval from the case of *Branson v. Studabaker*, 133 Ind. 147, as follows: "As effective a practical test as can be found is supplied by the answer to the question: Is the effect of the judgment appealed from such as to divest one of the parties of title, or to invest one of them with title?" It cannot be gainsaid that the effect of the judgment construing the clause of the will in controversy is to determine that the defendants do not have absolute title to the land, but that all of the children of the testator owned the land in equal shares. We think it is clear that the county court did not have jurisdiction to construe the will as between the plaintiffs and the defendants for the purpose of determining the title to the land in controversy.

It follows that the judgment of the district court is right and should be affirmed, which we accordingly recommend.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion the judgment of the district court is

AFFIRMED.