Argued September 15; modified November 2; opinion amplified
December 14, 1943

UNITED STATES NATIONAL BANK OF PORT-
LAND *v.* FIRST NATIONAL BANK OF
PORTLAND ET AL.

(142 P. (2d) 785, 143 P. (2d) 909)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*Wilber Henderson,* of Portland (Platt, Henderson, Warner, Cram & Dickison, of Portland, on the brief) for appellant.

*R. R. Bullivant,* of Portland (Pendergrass, Spackman & Bullivant, of Portland, on the brief) for respondent First National Bank.

BRAND, J. After making certain specific bequests, the will devised and bequeathed the residue of the estate to the plaintiff bank in trust. The provisions establishing said trust are as follows:

"The net income from my said trust estate shall be paid to my wife, Grace E. Clark, during her life as nearly as practicable in monthly installments as the same is realized; and after her death the net income shall be paid in the same manner to my daughter, Ruth A. Clark until the termination of this trust as hereinafter provided."

Subdivisions One and Three, of Article Six, are as follows:

"During the period of the trusteeship as hereinafter fixed, my said Trustee shall hold, manage, deal with, care for, preserve, and protect the property and estate herein devised and bequeathed to it (hereinafter for convenience sometimes designated as 'said trust estate' or 'my trust estate') and collect the income therefrom, all in accordance with its best judgment and discretion.

"The Trustee may retain as a portion of said trust estate any investments made or held by me in my lifetime; and the Trustee is hereby given full power and authority to sell, mortgage, rent or lease, invest, re-invest and vary the investment of said trust estate or any part thereof at such time or times and in such manner and upon such terms as it in its discretion may deem advisable, *all investments and re-investments made by the Trustee hereunder to be in such stocks, bonds and/or mortgages, as are generally regarded by conservative bankers as constituting highgrade investments,* regardless of whether or not such investments may be of a character approved or authorized by statute for the investment of trust funds; *provided, however, that all changes in investments or new investments shall also be approved in writing by the executive officer in charge of the Trust Department of the First Na-*

*tional Bank of Portland, Oregon, or of its successor. This latter provision has been made with the assurance in writing to my attorney, Estes Snedecor, by the United States National Bank that it will pay out of its regular trust fees any charge that may be made by said executive officer or by his bank for said service in approving said investments.''* (Italics ours.)

It is alleged in the complaint, and the evidence clearly establishes, that no such assurance was ever given by the United States National Bank. The trustee bank contends that the proviso in the will to the effect that all changes in investments or new investments shall also be approved in writing by the executive officer in charge of the Trust Department of the First National Bank of Portland is made wholly dependent upon an ''assurance in writing'' that the charges for the services of the consultant bank would be paid by the trustee bank out of its regular trust fees, and that since no such assurance was ever given by the trustee bank the entire proviso is void. If this be true, the consultant bank would have neither duties nor rights under the will, and the more serious questions presented by the parties would not arise. We will therefore first dispose of the contention that the entire proviso imposing duties upon the consultant bank should be deleted from the will by construction.

■ By way of foundation for its later contentions upon this issue, the trustee bank asserts the following proposition of law:

> ''It is a rule of general application that if a will is valid as to some of its provisions and invalid as to others, and the valid provisions can be separated from the invalid, and upheld without doing injustice to any of the beneficiaries under the will or defeating the general intent of the testator, the will must be sustained insofar only as it is valid.''

As a general statement and as thus carefully limited, it is approved. The doctrine of separability under different circumstances (undue influence) has been recognized by this court. *In the Matter of the Estate of Allen,* 116 Or. 467, at p. 499, 241 P. 996 (1925). We also agree that there are instances in which a court may reject a separable provision in a will which was inserted through mistake. 68 C. J. p. 897, § 626, and 68 C. J. p. 628, § 254.

But it is not every mistake which will avail to invalidate even a separable portion of a will. In this case we are dealing with an alleged mistake wholly disassociated from fraud or undue influence, and there is no broad rule that mistakes of that sort will invalidate provisions of a will. 1 Page on Wills, p. 322, § 161 et seq. The type of mistake which is asserted here is mistake in inducement.

> "A mistake in inducement exists where testator is mistaken as to facts which cause him to draw up and execute the will that he does, where he intends to execute the very instrument that he did, but where he would not have executed such a will with full knowledge of the facts. The general rule is that a will is valid, even though made by reason of a mistake of fact; at least as long as such mistake does not concern the identity of the beneficiaries or of the property of which the will disposes." 1 Page on Wills, p. 336, § 170.

It is true that if the will shows on its face that it was executed under a mistake of fact, the courts are more ready to treat it as invalid, in whole or in part, for example, where the existence of certain facts believed to be true is made an express condition on which a bequest is founded. 1 Page on Wills, p. 343, § 172.

In the case at bar, even if we assume that a separable portion of the will discloses a mistake in induce-

ment and should be treated as surplusage, the question remains—what portion? Is the entire proviso imposing duties on the consultant bank for the benefit of the beneficiaries of the trust to be deleted, or should the last sentence only be treated as surplusage? The answer depends upon an inquiry as to the true and dominant intent of the testator. O. C. L. A. 18-402, and cases cited thereunder.

We are of the opinion that the "assurance in writing" clause was not intended as a condition upon which should depend the validity of the clause imposing duties on the consultant bank. No complicated problem of draftsmanship was involved. If it had been intended that the "assurance in writing" clause should constitute a condition precedent to the operation of the consultant proviso, nothing would have been simpler than to have employed apt words to that effect, but no such words are used. As said by the trial judge:

"The will as a whole gives every evidence of skillful draftsmanship and it is fair to assume that if Mr. Clark had intended the particular sentence to embody a condition Mr. Snedecor would have worded it in such a manner as to do so clearly."

"In the examination of a manuscript, in order to ascertain the intention of a party, courts will take into consideration the ability of the person who drew the instrument correctly to express the terms, objects, and purposes desired." *Love v. Walker*, 59 Or. 95, at p. 103, 115 P. 296, (1911).

The testator may have mistakenly believed when he executed the will that the "assurance in writing" had been given, but it is clear that he was later fully informed concerning the truth, that he discussed the situation with his attorney and made no change in the will. It is hard to believe that he would have deliber-

ately allowed a provision to remain in the text which he hoped and expected would be held void after his death. The will speaks from the time of the testator's death, and at that time his mind had long since been disabused of any mistake. Since the duties imposed upon the consultant bank were made *with* the assurance concerning division of fees and not *conditioned upon* it, the assurance clause is to be classed with words expressing wish, desire, recommendation or confidence. As stated in *Floyd v. Smith,* 59 Fla. 485, 51 So. 537, 37 L. R. A. 651, 138 Am. St. Rep. 133, 21 Ann. Cas. 318, and quoted with approval in *In re Will of Pittock,*

> "The real question is: What was the intention of the testator? Did he intend that the words expressing the wish, desire, recommendation or confidence or the like should govern the conduct of the party to whom they may be addressed, or whether they are an indication of what he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion. It does not seem to have been found possible to formulate any definite statement of principle which will apply to every case." *In re Will of Pittock,* 102 Or. 159 at p. 189, 199 P. 633, 202 P. 216, 17 A. L. R. 218 (1921).

In the case of *In re Will of Pittock,* supra, at p. 188, this court said:

> "Trustees as a rule have more discretion than the immediate mandatory of the testator * * *. The language of the will as to the trustees will bear a more liberal construction than if addressed directly to the executor as such."

In a situation of this type the dominant intent of the testator should prevail over any subordinate intent.

> "The court has inherent jurisdiction to carry into execution all trusts. The settlor's primary intention is to accomplish certain results by way

of conferring benefits on his donees, in the ordinary case. If the achievement of the settlor's main objects cannot be brought about without an alteration of his clause regarding compensation, or an ignoring of it, it would seem clear that equity would have the power and duty to vary the trust in that regard, in order that detailed provisions of minor importance might not frustrate the settlor in the accomplishment of his main purpose." 4 Bogert on Trusts and Trustees, p. 2857, § 975.

The proviso imposing duties upon the consultant bank was not a bequest for its benefit, but on the contrary constitutes a general provision affecting the administration of the entire trust fund of $376,000. It was imposed for the protection of the beneficiaries of the trust. In this instrument, carefully and competently drawn, that protection is manifestly the dominant purpose of the testator, the matter of securing it without additional expense being merely incidental.

In support of its contention that the entire proviso should be held void, plaintiff cites *In re Appleby Estate,* 100 Minn. 408, 111 N. W. 305, 10 L. R. A. (N. S.) 590, 117 Am. St. Rep. 709, 10 Ann. Cas. 563 (1907) ; *Stark v. Conde,* 100 Wis. 633, 76 N. W. 600 (1898) ; *Perry v. Brown,* 34 R. I. 203, 83 A. 8 (1912) ; *Fisher v. Fisher,* 80 Neb. 145, 113 N. W. 1004 (1907). These cases are merely illustrations of the text, also cited, from Thompson on Wills (2nd Ed.) Sec. 377, which reads as follows:

"If a condition precedent be void or if it be or become impossible of performance, even though there be no fault on the part of the devisee, the devise can not take effect, and this is true even when the condition was beyond the control of the devisee, and he was entirely free from blame."

These cases are not inconsistent with our conclusions.

Again, the plaintiff relies upon Bryan's Appeal, 77 Conn. 240, 58 A. 748, 68 L. R. A. 353, 107 Am. St. Rep. 34, 1 Ann. Cas. 393 (1904); *In re Estate of Reynolds,* 273 Mich. 71, 262 N. W. 649 (1935); *In re Acres' Will,* 128 Misc. 254, 219 N. Y. S. 313 (1926). The cases cited support the general rule that ineffective references to extraneous documents or references to documents or papers which do not exist as a matter of fact must be disregarded and treated as surplusage. The rule was properly applied to cases in which the testator had attempted to incorporate an extraneous instrument by reference but in which the instrument was not sufficiently identified or was non-existent. *In re Estate of Reynolds,* supra, is typical. It was provided that certain personal property should be distributed according to a note "left by me and attached to my will." No such note was attached. Obviously, it was impossible to incorporate a non-existent instrument, and the will being otherwise complete on its face, the court was justified in treating the reference to the extraneous instrument as surplusage. *Handley v. Palmer,* 91 F. 948 (1899); *Washington Loan & Trust Co. v. Hammond,* 278 F. 569 (1922); *Carley v. The Greenwood Cemetery et al.,* 34 Misc. 70, 69 N. Y. S. 448 (1901), rest upon the same principle which was controlling in *In re Estate of Reynolds,* supra. They are not in point.

The plaintiff also cites *Gerrish v. Gerrish,* 8 Or. 351, 34 Am. Rep. 585 (1880) and *Boehmer v. Silverstone,* 95 Or. 154, 174 P. 1176, 186 P. 26 (1919); and 68 C. J. p. 640. The rule stated is to the effect that if a properly executed will incorporates a document by reference and clearly identifies the same it becomes a part of the will, but the document must be in existence at the time of the execution of the will. The rule is illus-

trated in the two Oregon cases cited, which merely hold that where a testator makes a will which refers to the will of another and adopts certain bequests by such reference, the instrument to which reference was made, if then in existence, becomes a part of the testator's will. In the case at bar, the "assurance in writing" was not incorporated in the will, but at most it was referred to as an inducement, and the proviso imposing duties upon the consultant bank is not dependent upon any rule of incorporation by reference. We adhere to the proposition that the proviso imposing duties on the consultant bank expresses the dominant intent of the testator and must control, notwithstanding the "assurance in writing" clause.

The questions which we have discussed were argued at great length in plaintiff's brief, but they appear to have been based upon after-thought. There is no pleading to the effect that the testator would not have vested the veto power in the consultant bank if he had not believed that the assurance in writing had been given. In fact, the only relief asked for in the prayer of the complaint is a definition of the duties of the consultant bank, which would have presented a moot question if the entire proviso were void.

■ We now turn to the questions concerning which the plaintiff asked for a declaratory judgment. What was the nature and extent of the duties imposed by the will upon the consultant bank? It was not a co-holder of the legal title, and it was not therefore technically a trustee. The many duties relative to the administration of the trust were wisely imposed only upon the trustee bank. It alone was charged with the custody of the stocks and bonds constituting the corpus of the estate, the collection of dividends and all the incidental accounting and reporting required in such cases, but the

veto power was vested in the consultant bank as to "all changes in investments or new investments." That power was for the protection of the beneficiaries and was vested in a corporation which was a stranger both to the trustee and to the *cestui que* trust. Although not a title holding trustee, the consultant bank was a fiduciary, having responsibilities analogous to those of a trustee and subject to the control of a court of equity.

"By the terms of the trust it may be provided that the action of the trustee in certain respects shall be subject to the control of another. The person upon whom such power of control is conferred may be * * * a third person otherwise unconnected with the trust. The power may be a power to veto certain acts of the trustee in the administration of the trust, as, for example, where it is provided that the trustee shall make no investment without the consent of the settlor or of a beneficiary or of a third person, or that the trustee shall not sell trust property without such consent. * * * The holder of the power is subject to liability for the exercise or non-exercise of the power only if he holds it as a fiduciary and not solely for his own benefit."

"Where the person upon whom the power of control is conferred is neither a co-trustee nor a beneficiary but is a third person otherwise unconnected with the administration of the trust, the power is ordinarily conferred upon him as a fiduciary and not for his own benefit. In such a case, although the holder of the power is not a trustee of the estate, he owes duties to the beneficiaries with respect to the exercise of the power. Thus if a testator leaves property to a trust company in trust and provides that the trustee shall make such investments as a named committee of experts shall direct, the members of the committee, if they undertake to act, owe a duty to the beneficiaries not to abuse the discretion conferred upon them." 2 Scott on Trusts, pp. 972, 975, § 185.

*Gathright's Trustee v. Gaut,* 276 Ky. 562, 124 S. W.
(2d) .782, 120 A. L. R. 1403 (1939). As to the power of
a court to control a fiduciary having veto power, the
learned author states that the principles which are
applicable are those which apply to discretionary
powers conferred upon a trustee. 2 Scott on Trusts,
p. 976, § 185.

■■ In determining the extent of the duties imposed
by law upon the consultant bank as a fiduciary, we must
examine the entire will. The corpus of the trust
amounted to $376,000 and consisted almost entirely of
stocks. It included, however, bonds to the amount of
$2,000, 160 acres of land and a little personal property.
Among other authorizations, the trustee was given full
power

> " * * * to sell, mortgage, rent or lease, invest,
> re-invest and vary the investment of said trust
> estate or any part thereof at such time or times and
> in such manner and upon such terms as it in its
> discretion may deem advisable * * *."

There is a specific limitation upon the power of the
trustee bank to the effect that all investments and re-
investments shall be

> " * * * in such stocks, bonds and/or mortgages,
> as are generally regarded by conservative bankers
> as constituting high-grade investments."

The authority of the trustee was broadened to this
extent, that within the class of securities above de-
scribed, the trustee was authorized to invest or re-
invest

> " * * * regardless of whether or not such in-
> vestments may be of a character approved or author-
> ized by statute for the investment of trust funds
> * * *."

Then follows the proviso contained in the same sentence which vested veto power in the consultant bank and correspondingly limited the power of the trustee bank, which reads as follows:

"* * * provided, however, that all changes in investments or new investments shall also be approved in writing by the executive officer * * *"

of the consultant bank. It may well be that this added safeguard was inserted because of the fact that investments were permitted even though they were not of a character approved or authorized by statute.

The trial court held that

"The duty of initiating all changes in investments or new investments of trust assets or funds is upon trustee bank, not upon said executive officer of consultant bank."

In this we concur. In its complaint the plaintiff alleges:

"That plaintiff claims that the defendant The First National Bank of Portland (Oregon) has no duties to perform under the said quoted provision of the said testamentary trust except to approve or disapprove an investment proposed by the plaintiff, and has no other duties or responsibilities."

If by this statement it is meant that the only ultimate action required by the consultant bank is to approve or disapprove of changes in investments or new investments, we agree. Upon this point the only question would be—what is the nature and extent of the investigation which is imposed as a duty upon the consultant bank, that it may fulfill its obligation of approval or disapproval? In its brief the trustee bank extends its contention, however. It is argued that the only service imposed upon the consultant bank is

"* * * that of passing upon whether or not a particular stock, bond or mortgage proposed as an

investment 'would be regarded by conservative bankers as constituting a high-grade investment' * * *."

The consultant bank, on the other hand, contends that its duty is not limited to determining whether or not a proposed purchase of a stock, bond or mortgage is "generally regarded by conservative bankers as constituting a high-grade investment", but that in order to perform its full duty as a fiduciary, it is

"* * * obliged to consider, investigate and base its approval or disapproval upon the condition of all of the assets of the trust estate, from the standpoint of their diversification, security, yield and maturity, the general condition of the trust estate, the prudence of the investment or change proposed, and the requirements of the beneficiaries of the trust."

The disputed questions concerning the amount and manner of payment depend upon the extent of the duties of the consultant bank. It assures us that the amount of the fee is the "most unimportant part of the controversy." The substantial question relates to the extent of its duties. Payment should, of course, be commensurate with the risk, ability and effort required, but determination of its amount must await determination of the nature and extent of its duties.

The function of the consultant bank is not limited to determining that a proposed investment falls within the class generally regarded by conservative bankers as of high grade. What we shall call the "conservative banker test" is imposed as a limitation on the powers of the trustee bank which alone can initiate changes in investments or new investments. That test is not incorporated in the clause requiring that all changes, etc., shall be approved by the consultant. So

far as the will indicates, the giving or withholding of that approval rests alone in the prudent and experienced discretion of the consultant. But the point is that the trustee bank in initiating changes or new investments would not have performed its full duty by merely proposing some investment which met with the conservative banker test.

> "A trustee has not performed his duty merely because he has made an investment in a type of security which is authorized; he must use care and skill and caution in selecting the particular investment." 2 Scott on Trusts, p. 1222, § 227.12.

And see *Delafield v. Barrett*, 270 N. Y. 43, 200 N. E. 67, 103 A. L. R. 941 (1936), and *Matter of Jacobs*, 152 Misc. 139, 273 N. Y. S. 279 (1934). It is true that the duties of the consultant bank are in many respects narrower than those of the title-holding trustee, but in one respect they are the same. When the making of an investment is under consideration, both must exercise prudent discretion not only in confining the choice within the conservative banker class, but also in selecting an appropriate security within the class. The one must exercise that broad discretion prior to initiating and proposing, the other prior to approving or disapproving, but both are fiduciaries, and the same obligation rests upon each in this particular.

■ We must next consider whether the consultant performs its duty by passing upon a proposed investment in vacuo, without reference to its place in the entire plan of the trust, or whether its duties involve a wider scope. The will requires approval by the consultant not only of all new investments, but also of all changes in investments. It seems elementary that the approval of a change not only requires that we consider

to what but also from what the change is proposed. Other terms of the will cast much light on this issue.

■ To his brother, the testator gives $100 per month to be paid out of the trust estate. The trustee is authorized to purchase a life annuity of $100 per month in satisfaction of this bequest. Such a purchase would involve the expenditure of a substantial sum realized by a sale of securities from the trust portfolio. Obviously, this would constitute a change in investments as to which the veto power of the consultant would apply. On October 9th, 1940, at the time of the submission of the first proposed investment for approval by the consultant, the trust estate contained 14,675 shares of stock in 52 different corporations, $2,000 in bonds, 160 acres of land and a little personal property. Where a proposed change in investment involves only a sale of securities to realize cash with which to purchase an annuity for a third person or to pay taxes, the transaction involves no new investment, but surely there is a change in investment. In such event, the only question which could be submitted to the consultant for approval would be which of the assets of the trust should be sold. The choice of the thing to be sold must be made among a great variety of securities of different values with different yields, some, no doubt, speculative and non-income producing, and others with a substantial dividend record, some fluctuating in value, others stable. The preservation of proper diversification and maintenance of adequate return, having in view the needs of the beneficiaries, are considerations of prime importance. It may be that land should be sold rather than securities. It would be impossible to exercise any informed discretion on such an issue without a study of the entire portfolio. The case of a possible

purchase of an annuity for a beneficiary is used as an illustration, but there are other situations which may arise involving changes in investments and in which the holder of the veto power would be required to consider the entire portfolio before he could exercise the discretion required of him.

It is provided that if the net income from the trust estate plus the income from certain other specified sources should be less than an average of $700 per month, the trustee should be authorized, on the request of the testator's wife, to

> "* * * encroach upon the principal of my estate to such an extent as to provide comfortably for the needs and requirements of my wife and daughter."

Again, it is provided that if and when requested so to do by the wife of the testator, the trustee is authorized to pay to her out of the corpus of the trust estate such sums as she may request, but not to exceed in any one year 2 per cent of the then value of the trust estate. Thus, it appears that there may be annual liquidations of portions of the principal of the trust. Any such changes in investments would involve the same problem heretofore considered. Approval of the sale of securities for such a purpose could not be intelligently given without consideration of the entire trust portfolio.

Upon the death of the testator's wife, the trustee is directed to

> "* * * invest for the benefit of my daughter Ruth A. Clark, the sum of Ten Thousand Dollars ($10,000.00) in a single premium refunding life annuity deferred, to begin when my daughter attains the age of 60 years,"

the annuity contract to be delivered to the daughter. Again, it is provided that if at the time of the death of

the wife of the testator, his daughter shall be twenty-five years of age or over, or if not, as soon as she shall attain said age, the trustee shall transfer and deliver to her

"* * * ten per cent (10%) of the then value of the corpus of my estate; and every two years thereafter until she shall attain the age of fifty (50) years, there shall be paid, transferred and delivered to her ten per cent (10%) of the then value of the residue of my estate."

The entire residue is to be delivered to the daughter upon her reaching the age of 50 years.

Again, the trustee is authorized to consent to the re-organization, consolidation or merger of any corporation and to exchange the securities held by the trustee for the securities issued in connection therewith. The approval of such a transaction involves much more than the application of the conservative banker test as a rule of thumb.

Thus, it appears that, depending upon various contingencies, the happening of which cannot now be foretold, problems involving substantial sums of money will arise which will require the selection from among many and divers forms of securities the most appropriate ones for sale.

█ We have already indicated that in respect to the matters of changes in investment and new investments the rules governing a title-holding trustee in the exercise of discretion are applicable to the consultant. The rules covering discretion in such cases are well stated as follows:

"The trustee should take into consideration the circumstances of the particular trust which he is administering, both as to the size of the trust

estate and the requirements of the beneficiaries. He should consider each investment not as an isolated transaction but in its relation to the whole of the trust estate. Thus, as we shall see, he should so diversify the investments as to diminish the risk of serious losses. Such distribution can be more readily made in the case of a large trust estate than in the case where it consists of two or three thousand dollars. He should also consider the needs of the beneficiaries of the trust. Thus, where the trust estate produces a large total income, his choice of investments is not necessarily the same as in the case where the income is barely sufficient for the support of the beneficiaries. This does not mean that he is justified in taking an improper risk of loss of the principal in order to secure an income sufficient for the support of the beneficiaries. It is, however, a factor to be considered in the exercise of his prudent discretion." 2 Scott on Trusts, p. 1223, § 227.12.

See also 2 Scott on Trusts, p. 1222, § 227.12; p. 1229, § 228; p. 1238, § 230.1. The foregoing text is supported by authorities cited therein and by the following portions of the Restatement on the Law of Trusts: 1 Restatement of the Law of Trusts, p. 645, § 227; p. 651, Paragraph *m*; p. 660, § 228, and see 131 A. L. R. 1158, note.

As we said in a recent case:

"Even though we concede that the defendant as trustee under the trust deed from Marie Frazier to him had certain discretionary power in investing funds of the trust estate, still he was required to 'use judgment and prudence, and if no limits are placed on his discretion, he must nevertheless invest the funds according to approved rules for trust investments.' " *Marshall v. Frazier,* 159 Or. 491, at p. 532, 80 P. (2d) 42 (1938).

A consideration of the evidence and of the practical construction of the will by the parties fortifies our conclusion that the duties of the consultant were not circumscribed as contended by the trustee bank. It is the position of the trustee bank in this litigation that the consultant bank has no duties to perform in connection with sales of securities, as distinguished from purchases. Administration of the trust commenced on June 24th, 1940. On August 1st, 1940, the trustee bank sent various stocks to the Chase National Bank in New York to be sold. Among them was one share of stock of the General Motors Corporation. The Chase National Bank wrote to the trustee bank, citing the provisions of Mr. Clark's will and stating that the corporation requested that the consent of the consultant bank be secured. On August 16th, 1940, the trustee bank received a letter from the transfer agent of the General Motors Corporation to the effect that they were in disagreement with the opinion of the attorneys for the trustee bank and had accordingly taken up the matter with counsel for E. I. du Pont de Nemours & Company (there being stock in that company held in the Clark trust) and that they (the attorneys)

"* * * concur with us in our opinion that the approval in writing by the executive officer in charge of the Trust Department of the First National Bank of Portland, Oregon, should be obtained in connection with a *sale* of stock held by the trust." (Italics ours.)

On October 11th, 1940, the trustee bank wrote to the consultant bank in part as follows:

"Dear Mr. Close:
"Under the terms of the will of Alexander M. Clark, Deceased, we as Testamentary Trustee, are

required to secure the approval of the Executive Officer in charge of the Trust Department of the First National Bank of Portland to proposed investment changes. As shown by the enclosed list of assets of this trust, with the exception of $2,000.00 Portland Gas and Coke Company bonds, the investments are confined entirely to equities. Although the long-range outlook for these various securities seems favorable, it is our judgment that it would be prudent to obtain the advantages of diversifications by transferring a portion of the account to prime-quality fixed obligations. We believe such a change should be accomplished gradually, and in such a manner as to disturb as little as possible the income which the existing investments produce.''

The letter then proposes an investment in the nature of a secured loan° to the Gilmore Oil Company. It specifies the location of property on which a mortgage is to be taken, being in Eugene, Oregon, and indicates the nature of improvements made and to be made on that property, with other details concerning the proposed transaction. The letter, however, does not end with the description of the proposed new investment. It continues:

''To provide funds for the acquisition of this obligation, it would seem to us proper to dispose of the following securities:

 73 common shares—U. S. Steel Corporation
 125 common shares—Iron Fireman Manufacturing Company
 200 common shares—Packard Motor Car Company
 200 shares   —Richfield Oil Corporation

''The above-itemized securities have been selected for liquidation because of the relatively large holdings of these particular issues. Moreover, at

prevailing prices sale can be made for a total amount approximating carried-at values.

"Your approval of the proposed changes of investments on the enclosed carbon copy of this letter is requested."

On October 16th, 1940, the trustee bank wrote to the consultant recommending the sale of a fractional share of Washington Railway and Electric Company common stock and requesting "your authority to proceed with the sale." On April 12th, 1941, the trustee bank wrote to the consultant bank as follows:

"We have been authorized under the will of Alexander M. Clark to obtain the approval of the executive officer in charge of the Trust Department of the First National Bank of Portland (Oregon) to any proposed investment change.

"Due to payment of additional state taxes, the principal of this trust is now overdrawn in the amount of $3,417.28.

"Selection of securities to be sold for the purpose of retiring the advance has been considered by our Trust Investment Committee. After carefully reviewing the circumstances affecting the various issues, our Committee believes that required funds can best be obtained by sale of 40 shares of Crown Zellerbach preferred stock. *A list of all the assets of this trust account is enclosed for your inspection and review.*"

The testimony shows that the proposed sale of the Crown Zellerbach stock was only for the purpose of paying taxes. No proposed new investment was involved, yet the approval of the consultant is requested. On April 26th, 1941, the trustee bank wrote to the consultant bank seeking approval of the sale of a very small interest in Washington Railway and Electric

Company common stock. We quote from the letter the following:

"Under the terms of the will of Alexander M. Clark all purchases *and sales* of securities are subject to approval of the executive officer in charge of the Trust Department of the First National Bank of Portland (Oregon) or its successor." (Italics ours.)

On July 29th, 1941, the trustee bank asked for the approval of the sale of two shares of Detroit Edison Company stock, referring to the terms of the will as the reason for the request. A similar request was made for approval of a sale of a small interest in the Detroit Edison Company on October 16th, 1941. On October 21st, 1941, application was made for the approval of the sale of a small interest in Westinghouse Electric and Manufacturing Company common stock. The letter again recited that under the terms of the will,

"* * * all sales and purchases in this Testamentary Trust are subject to the approval * * *" of the consultant bank.

In the foregoing it appears clear that notwithstanding the opinion of their own counsel, the trustee bank did in actual practice act upon the construction of the trust as declared by counsel for the consultant, by counsel for the Du Pont Company and by the General Motors Corporation, and accordingly sought approval for sales as well as for purchases.

The plaintiff in this litigation contends that the only duty of the consultant is to apply the conservative banker test and that therefore it is unnecessary for the consultant to consider the entire portfolio, yet in the letter of October 11th, 1940, supra, in requesting substantial change in the corpus of the trust, a list of

assets was furnished to the consultant, and their situation as to diversification and the like was discussed. Again, in the letter of April 12, 1941, in connection with the application to sell securities for the payment of taxes, we read:

"A list of all the assets of this trust account is enclosed for your inspection and review."

It is clear that the conservative banker test could apply only when new investments are contemplated. If, as we think, the duties of the consultant include the approval of sales as distinguished from purchases, the scope of the consultant's duties cannot be limited to the application of the conservative banker test. When the sale of securities for the payment of taxes was in issue, the only problem which could arise would be that of selecting from among many securities the ones most suitable for sale.

Relative to the alleged necessity of furnishing to the consultant a list of securities in the trust, Mr. R. M. Alton, vice-president and trust officer of the trustee bank, testified as follows:

"Q * * * Was that the only reason that you now recall for sending that list of securities?

"A Well, I think it would be an intelligent thing to do, to give them a list of those if they were going to determine whether those were proper sales or not.

"Q Yes. Why would it be an intelligent thing to do if they were to determine whether they were proper sales?

"A Because they should have complete information on what they were doing.

"Q Complete information as to what?

"A As to the assets.

"Q As to the assets of the entire trust?

"A That is right."

\* \* \* \* \*

"Q Now I will ask you again why, except for reasons of courtesy, you sent the entire portfolio of the trust to Mr. Close on October 11th, 1940, if you did not intend him to examine the entire portfolio?

"A Frankly, I believe that no man could do this job without knowing all the assets in the estate and knowing the reasons behind them.

"Q That was your position at the time you wrote the letter of October 11th?

"A It would be mine today, I think.

"Q Yes. You feel that no man could intelligently veto or approve a tendered investment unless he also made an appraisal of the remaining assets in the trust at the time he was called upon to exercise his discretion?

"A Yes. I don't think that is pertinent here, because I don't think that as to what their duties are has been outlined yet.

"Q I am asking you if you agree with that last statement.

"A Yes, I do."

Again he testified:

"I think that they were entitled to all the information we had."

*       *       *       *       *

"Q A conservative banker, then, in your opinion, in determining whether a particular investment was desirable, also would feel obliged to consult the other investments in the portfolio to determine whether the proposed investment fitted in with the existing scheme of things?

"A There might be one exception to that. That would be Government bonds. Other than that I would say yes.

"Q Other than that would you say the common practice would be, or common prudence, at least, we will say, would require the consideration of the entire portfolio?

"A Yes."

Coming from a responsible head of the trustee bank and being strongly against the present contention of that bank, the testimony weighs heavily in favor of the position of the consultant.

The lengthy testimony of W. J. Collins, E. H. Green and C. L. Wolf, who testified as experts on investments, and of L. L. Miller, vice-president and trust officer of the Portland Trust and Savings Bank, and A. L. Grutze, vice-president and trust officer of the Title and Trust Company, is all to the same general effect and may be summarized by saying that sound practice requires of one passing upon changes in investments and new investments that he should give consideration to the entire corpus of the trust, and that he would not fully perform his duties by merely applying the conservative banker test to individual investment proposals. Their testimony also supported. the claims of the consultant bank that its compensation should be measured by a percentage of the entire trust and that one-eighth of one per cent was reasonable. The testimony of Carlos C. Close, trust officer of the consultant bank, is clear, strong and persuasive to the same effect, as is that of George W. Stewart, an officer of the consultant bank. It is significant to note that the only witness called by the plaintiff was Mr. Alton, to whose testimony we have already referred. The testimony of all the other witnesses uniformly supports the contention of the consultant bank. We think it fair to say that the testimony of Mr. Alton of the trustee bank was without subterfuge and was exceedingly frank, manifesting primarily a desire to obtain a ruling from the court for future guidance rather than merely to

win a lawsuit. The trustee bank has attempted to by-pass the undisputed testimony rather than to contradict it. It appears to recognize that the normal duties of a consultant are as we have indicated, but it relies strictly upon a construction of the will which it has adopted, to the effect that the only duty imposed upon the consultant by that instrument is to apply the conservative banker test. Mr. Alton made their position clear in his testimony.

> "Q Do you think that it is sound investment practice, Mr. Alton, for anyone charged with investment duties to decline to consider the other assets?
>
> "A No, I don't but the interpretation placed upon this paragraph by our attorneys is that all he has to do is to say whether that is a banker's investment or not and not consider the whole thing. Now as I say, I think that is a perfectly proper limitation if a man wants to put it in his will."

Since we have rejected the plaintiff's narrow construction of the will concerning the duties of the consultant by holding that the conservative banker test is not the sole measure of the consultant's duty, it follows that the undisputed testimony concerning the normal duty of a consultant when not limited by the conservative banker test is controlling.

. So far as changes in investments and new investments are concerned, we construe the will to mean that the duty of the consultant bank under the veto power is that of a fiduciary exercising a prudent discretion similar to that of a trustee, which in many instances will require the consideration of the entire trust portfolio, having reference to diversification, security, income, maturity of the assets and the needs of the bene-

ficiaries, but that it does not involve any duty of initiating changes in investments or new investments.

The remaining question relates to the amount and method of compensation. The evidence requires that the matter of compensation for the first year be considered separately from that of subsequent years. On June 12th, 1940, Mr. Alton wrote to Mr. Close, citing the pertinent provisions of the will, and said:

> "Inasmuch as we are considering accepting the appointment called for in this will, we would appreciate your advising us as to what your charges will be for the services called for."

On June 13th, 1940, Mr. Close replied as follows:

> "In response to your letter of June 12 inquiring as to what our charge will be for services described and placed on us by Section Sixth, paragraph 2 of the will of Alexander M. Clark, deceased, let us say that for the first year of such services the charge will be $\frac{1}{8}$ of 1% of the value of the trust estate, calculated in the usual manner, and that at the expiration of the first year this fee shall be subject to adjustment on the basis of our experience during that time."

Without further correspondence concerning the amount of compensation, the trustee bank commenced the practice of submitting proposed purchases and sales to the consultant for approval or rejection. Mr. Alton testified that he made no objection after receiving Mr. Close's letter of June 13th and testified further as follows:

> "Q You think it is quite clear that it mentioned the entire estate as the measuring stick for the one-eighth of one percent?
> "A I think it speaks for itself.

"Q Well, I am asking now if you know of any ambiguity in it?

"A I don't see any.

"Q It is conceded that you made no objection to that letter?

"A None, no.

"Q The first time the question of fees was mentioned by you to the First National Bank was in your letter of January 17th, 1941, when you tendered a check for $10.80?

"A That is right."

The conduct of the trustee bank in this connection manifested an intention to accept the offer contained in the letter of Mr. Close, which letter specified not only the measure of compensation but also the period of time covered by the proposal. Restatement of the Law of Contracts, §§ 21 and 72; 1 Williston on Contracts, § 91; *Gordon v. Curtis Bros.*, 119 Or. 55, 248 P. 158 (1926); *Maeder Steel Products Co. v. Zanello*, 109 Or. 562, 220 P. 155 (1923). The evidence discloses that the trustee bank believed itself unauthorized to bind the trust estate for the payment of the compensation specified in the letter of Mr. Close, but we hold that the trustee became personally liable to pay that compensation whether or not the agreement was in excess of its authorized powers and whether or not it was entitled to indemnity from the trust estate. 3 Bogert on Trusts and Trustees, p. 2110, § 713; 2 Scott on Trusts, p. 471 et seq. § 262. It may be that the payment of the agreed compensation for the first year will be approved as a proper charge against the corpus of the estate when the accounts of the trustee are submitted to the circuit court for examination and approval. In any event, the consultant bank is entitled to judgment against the

trustee bank in the sum of $470, being one-eighth of one per cent of the value of the trust estate.

Coming now to the matter of compensation subsequent to the first year, it is clear that the compensation for the consultant bank cannot be taken from the fee of the trustee bank for the simple reason that the trustee bank never gave the "assurance in writing". Compensation must be paid out of the trust estate. We find that the trustee would be authorized, in accordance with the wishes of the beneficiaries, to pay the compensation of the consultant out of principal rather than from the income. O. C. L. A. 74-112 (2). It is not, however, a matter of great importance, for if by reason of the payment out of income the income should become insufficient in amount to provide for the needs of the beneficiaries as defined in the will, the trustee, on request of the beneficiaries, would be authorized by the will, in its discretion, to supplement the income from principal.

By its decree of April 20th, 1942, the trial court fixed the annual compensation of the consultant bank at one-eighth of one per cent of the trust estate, for a period of three years from June 24th, 1940, and retained jurisdiction of the cause and of the parties for the purpose of future modifications. Although we have found that the consultant has substantial duties as a fiduciary and that its compensation should be fixed in view of the nature of those duties, the record before us does not justify an order fixing the compensation at one-eighth of one per cent of the corpus of the estate for the years subsequent to the first. Although the nature of the consultant's duties have been indicated, the performance of those duties depends upon the initiating of proposed investments or changes in investments

by the trustee bank. We have accepted the defendant's view as to the nature of the consultant's duties when called into play by the trustee, but we cannot accept the estimates of the witnesses as to the appropriate annual compensation when neither the witnesses nor the court know or could know how frequently the services of the consultant will be invoked. The record discloses that substantial proposals were submitted to the consultant for approval during the first year of the administration of the trust, but from June 24th, 1941, to January 16th, 1942, the date of the trial, it appears that no new investments were proposed by the trustee and that only three insignificant sales, totalling $123.02, were proposed. While we have said that approval of sales may involve a consideration of the entire portfolio with reference to diversification and the like, it is clear that these three proposals did not.

■ Mr. Close, in naming the charge to be made for the first year, expressly recognized that re-negotiation in the light of experience would be proper at the end of that time. In a letter to Mr. Alton, dated March 1, 1941, Mr. Zollinger, assistant vice-president of the consultant bank, correctly analyzed the problem. He said:

> "Our fee does not 'apply' either to the entire estate or to the portion thereof which is to be sold and re-invested. Our fee can be nothing other than the reasonable or agreed value of our services."

As to the first year, the fee was agreed; as to subsequent years, it must be reasonable. Since the volume of work of the consultant in subsequent years is wholly contingent upon circumstances unknown to the present record and which will be unknowable in the future until the trustee bank shall initiate action, we conclude that if the parties, in the light of our construction of the

will, cannot agree upon a reasonable periodic fee and are compelled to seek the aid of equity, then the court should make a periodic determination after the services of the consultant have been invoked and rendered. The court should not speculate on matters which shall presently be susceptible to definite proof. The consultant considered it proper to adjust the fee for subsequent years on the basis of experience. Since the experience reflected in the testimony is insufficient on which to base a prediction, the court should await enlightenment by further experience. The tender of $10.35 as compensation for the first year was based upon a false impression concerning the duties of the consultant bank and was clearly insufficient, irrespective of the contract. We think the parties should have little or no difficulty in arriving at an agreement, or in default thereof, in submitting the question to the circuit court on the basis of actual experience. The submission can be in connection with its regular periodic reports. This conclusion is verified by the testimony of Mr. Alton.

"I don't believe that we are asking anything in particular of the Court except the interpretation of this. If the Court will tell us what this will says we will be able to go on."

It appears that two of the beneficiaries offered to waive provisions of the will relative to the veto power. The trial court correctly refused to give effect to the offer, because under the will persons other than those making the offer have interests in the estate by way of remainder. *Closset v. Burtchaell,* 112 Or. 585, 230 P. 554 (1924).

The decree of the circuit court will be modified by eliminating that portion thereof which purported to

fix the fee for the second and third years at one-eighth of one per cent of the corpus of the estate. Otherwise the decree is affirmed, and the cause remanded to the circuit court which will retain jurisdiction to determine from time to time the compensation of the consultant bank in conformity with this opinion. The costs of both parties will constitute a charge against the trust estate.

---

Former opinion amplified December 14, 1943

## On Amplification of Opinion
### (143 P. (2d) 909)

BRAND, J. The consultant First National Bank of Portland, deeming that our opinion requires clarification, has petitioned that the opinion or the mandate make more specific provisions in four respects.

They ask,

"(a) Whether the agreed compensation of consultant bank for the first year of the operation of the trust is a proper charge against the corpus of the trust estate.

"(b) Whether, if the said agreed compensation for the first year of the operation of the trust, is a proper charge against the corpus of the estate, the same must be fixed as such by supplemental pleadings to be filed in the court below."

We had considered that this was a matter in which the consultant bank had little if any interest and that the issue would properly arise between the trustee bank and the beneficiaries of the trust. However, the evidence is all before us. The contract covering the first year of the services of the consultant bank was undoubtedly made in good faith. The decree of the lower court provided that the agreed compensation for

the first year should be charged against the corpus of the estate. The beneficiaries were parties to the cause in the lower court but did not appeal, and under these circumstances we have concluded that the agreed compensation for the first year of the operation of the trust should be made a charge against the corpus of the estate, and it will be so ordered. It will not be necessary to present the matter by supplemental pleadings to the court below.

Consultant bank next asked for more specific provisions as to

"(c) Whether or not the compensation of consultant bank, in the event of disagreement between consultant bank and trustee bank, covering the years of the operation of the trust subsequent to the first year, is to be fixed in connection with an annual accounting to be filed by the trustee bank in the court below, or whether the same is to be fixed, in the event of disagreement, by supplemental pleadings, dealing only with the matter of said compensation, to be filed in this cause in the court below."

In affirming the decree of the court below, except as modified, we have held that that court should retain continuing jurisdiction of the cause. In the event of disagreement between the consultant bank and the trustee bank covering the years of the operation of the trust subsequent to the first and concerning the matter of compensation of the consultant, the issue should be submitted in the above entitled cause by motion and affidavit and upon such further evidence as the court may permit or require. If, as asserted, the trustee bank makes no periodic general reports to the circuit court, it is not our intention to require them. The issues in the case at bar do not involve any question concerning the general duty of the trustee bank to submit its ac-

counts and charges to the court for approval, although we have considered it a common and safe practice.

Lastly, the consultant bank asks for a further specific provision declaring

"(d) Whether or not the term 'costs' used in the last sentence of the opinion includes the reasonable attorneys' fees of both parties to this appeal, insofar as trustee bank and consultant bank are concerned, so that said reasonable attorneys' fees in connection with this appeal, or any subsequent reasonably necessary attorneys' fees, will constitute a charge against the trust estate."

The term "costs" as used in the last sentence of the opinion did not include attorneys' fees in this court, nor do we deem it proper to decide in advance what, if any, reasonable attorneys' fees should be allowed in the event of future controversy, nor whether if allowed they should constitute a charge against the trust estate. Those matters will come before the circuit court if further controversies arise. The motion of the consultant bank heretofore filed in this court for the allowance of additional attorneys' fees for legal services in connection with this appeal was not called to our attention, and we did not pass upon it. The appellant was an express trustee. The respondent consultant bank was, we have held, a fiduciary having rights and duties similar to those of an express trustee. Both parties were justified in seeking direction from the court concerning their respective duties under the will. Both are entitled to reimbursement out of the corpus of the trust for the reasonable and necessary expenses incidental to the litigation, including attorneys' fees. 1 Restatement of the Law of Trusts, § 188, Comments a, b, and c. The amount of compensation of the trustee bank for its services in this and other matters is not

before us, and we express no opinion concerning it. The consultant bank was the defendant in the case. It prevailed below and has substantially prevailed here. We think that an award of a reasonable fee to it is properly incidental to the determination of the case on the merits. The interest of the respondent bank was twofold: first, to secure an adjudication of the measure of its duties and, second, to secure for itself compensation for its past and future services. In view of the fact that it was actuated in part by self-interest as well as by its sense of obligation under the will, we find that only a very modest fee for its services in this court should be allowed, and the same is fixed in the amount of $250.