Argued July 25, affirmed as modified and
remanded August 20, 1979

PHILLIPS et al,
*Appellants,*

*v.*

BOARD OF HOSPITAL TRUSTEES
OF PORTLAND,
*Respondent,*

(Nos. 374-502 and A-76-04-05016, CA 11879)

599 P2d 1134

Jarvis B. Black, Portland, argued the cause for
appellants. On the briefs were David N. Hobson, Phil-
lips, Coughlin, Buell, Stoloff & Black, Ross A. Fearey
and Buell, Black, Gates & Dupuy, Portland.

[401]

Ridgway K. Foley, Portland, argued the cause for respondent. With him on the brief was L. Edward Robbins, Robert G. Simpson, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Schwab, Chief Judge, and Gillette and Campbell, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

The issue in this equitable proceeding is whether to expand the terms of a trust on the ground that it has become impossible to expend the income of the trust.

There was a similar application to the circuit court in 1973. The significant terms of the trust, as amended by the court's 1973 orders, are as follows: (1) the trust is administered by a committee designated in the last will of Louis G. Clarke; (2) the committee distributes trust income to "worthy Masons," their wives, widows and daughters residing in Oregon, Washington and Idaho; and (3) the trust income is applied to hospital charges incurred at Good Samaritan Hospital.

The administering committee initiated this proceeding contending that, notwithstanding the court's 1973 orders, income is accumulating in the trust faster than it can be distributed within the terms of the trust. The committee asks that the trust be further expanded to cover hospital charges incurred by "worthy Masons," at any Oregon hospital. Good Samaritan Hospital argues against any modification of the terms of the trust.

Good Samaritan generally agrees that income is accumulating in the trust faster than it is being distributed. It contends, however, that this is caused solely by the administering committee's unduly conservative attitude toward which "worthy Masons," qualify for payments from the trust — and thus is not due to the terms of the trust being overly restrictive. Specifically, Good Samaritan criticizes the administering committee's reliance on a claimant's financial need as a criterion in deciding whether a claimant qualifies for assistance from the trust.

There is much to be said for Good Samaritan's criticism of the committee's conservative attitude toward financial need. However, the terms of the trust invest the committee with broad discretion:

[403]

"I [Louis G. Clarke] direct that the committee be guided by these views, but I clothe the committee with a broad discretion in the control of the hospital facilities herein provided for. I desire the committee to function in a humane and sympathetic spirit and in exceptional cases the instructions given in this instrument may be disregarded where the strict construction of my will would lead to harsh or arbitrary action or action out of harmony with Masonic principles."

The committee has chosen to attempt to administer the trust as a charitable trust so that its income is tax exempt. This potentially makes more money available to aid "worthy Masons." We are satisfied this is consistent with the intent of Louis G. Clarke and within the committee's broad discretion.

The record indicates that state tax officials—and, by inference, federal tax officials, too—have regarded and will continue to regard the trust as tax exempt so long as the committee continues to rely on claimants' financial need in administering the trust. While the committee may well be erring on the side of caution to maintain the trust's tax exempt status, under all of these circumstances we cannot say that the committee's caution is wholly unwarranted.

■ This leaves us with a situation where income is accumulating in the trust faster than it can be distributed under the current terms of the trust. In such a situation, courts are authorized to "remodel" a trust, giving maximum possible effect to the intent of the settlor. *Good Samaritan Hosp. v. U. S. Nat.,* 246 Or 478, 425 P2d 541 (1967); *U. S. Nat. Bank v. First Nat. Bank,* 172 Or 683, 142 P2d 785, 143 P2d 909 (1943); Restatement (Second) of Trusts, §§ 381, 399 (1959).

We think we can give maximum effect to the settlor's intent and also facilitate accomplishment of the primary purposes of the trust by expanding the terms of the trust as follows: the administering committee may use the trust income to pay the

[404]

hospital charges of otherwise eligible claimants at any hospital in the metropolitan Portland area (Multnomah, Clackamas and Washington Counties); provided, however, that Good Samaritan Hospital shall have priority to the extent that if the trust income is insufficient to pay all claims allowed by the committee, claims for care at Good Samaritan Hospital shall be paid first. In all other respects the trial court's orders are affirmed.

There is one final issue. The administering committee might never be able to dispose of all trust income unless it is more diligent in notifying potential claimants of the available benefits. The trial court thus ordered *in 1973* that the committee mail notification of the available benefits to all Oregon doctors and all members of Masonic Lodges in Oregon, Washington and Idaho. The present record indicates something less than complete compliance with the trial court's 1973 order. On remand, we invite the trial court to explore using its full equitable powers to insure that the greatest practical notification of the available trust benefits be disseminated.

Affirmed as modified and remanded.