Argued June 21, affirmed September 8, 1972

## BURESH, *Respondent, v.* FIRST NATIONAL BANK (No. 18840), *Appellant.*

500 P2d 1063

*Harold D. Gillis,* Eugene, argued the cause for appellant. On the brief were Butler, Husk & Gleaves, Eugene.

*Sidney E. Thwing,* Eugene, argued the cause for respondent. With him on the brief were Thwing, Atherly & Butler, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant appeals from a decree holding that William A. Seman was a domiciliary of California and California law governs in the construction of his will; that the application of that law requires that a trust created by paragraph Second of his will be held invalid; and that the estate be distributed to plaintiff under Oregon's intestacy statutes.

Some of the background facts for understanding of this litigation are recited in *Buresh v. First National Bank,* 262 Or 104, 496 P2d 913 (1972).

William A. Seman was unmarried at his death and his sole surviving issue is his daughter Lorraine M. Buresh, a domiciliary of Illinois. From before 1956 to his death in 1968 his only home was California. In 1968 he removed cash and stock certificates from the state of California and deposited them in banks located in Eugene, Oregon. The evidence indicates that until April 1968 decedent had no interests or connections in Oregon. Ownership of the stock certificates was litigated in a replevin action, *Buresh v. First National Bank,* supra, in which it was held that California law controlled as to the validity of transfers of the stock certificates in previous years in California to the

daughter, and that under that law the transfers were valid. In September of 1968 decedent had an Oregon attorney draw up his will in which the only devise of any property was of "* * * all the rest, residue and remainder * * *" to the First National Bank of Oregon as trustee. The trust created in the will provides for the daughter for life "* * * such sums from income as my trustee in its sole discretion shall deem necessary or advisable * * *" taking "* * * into consideration any other income or support received or property possessed by my daughter * * *," and in emergencies, in the sole discretion of the trustee, it is provided that the principal as well as income may be used for the daughter. The income from the unexpended remainder of the trust estate on the daughter's death is directed to be used for the charitable purpose of providing scholarships to Caucasian residents of California and Illinois who meet certain qualifications.

The will was mailed from Oregon to decedent in California and executed and witnessed there on October 25, 1968. Decedent died 12 days later in a California hospital. After the replevin action the estate consists of real property in California valued at $8,500 and the personal property in Oregon, largely cash in a savings and loan association account, valued at about $25,000.

## ISSUES PRESENTED

(1) Should Oregon law or California law govern in construing the will?

(a) If California law governs, what application would the California courts give to Cal Probate Code § 41 (West 1956)?

(b) If part of the trust fails, does it fail for all purposes?

(2) Is the present action barred by a statute of limitations?

(3) Is there a basis for a declaratory judgment in this case?

(1a) We agree with the trial court that California law governs construction of the will. Decedent was a domiciliary of California for many years. There is a paucity of evidence that he ever intended to or did change it. On the evidence in the record, we can only speculate as to his reason for bringing his personal property to Oregon and having his will drawn by an Oregon attorney. Defendant seems to argue that we should believe decedent knew the provisions of Cal Probate Code § 41, and that he came to Oregon in order to evade its application. Cal Probate Code § 41, effective at all times pertinent to this case, provides:

> "No estate * * * may be * * * devised * * * to any person * * * in trust for charitable uses, by a testator who leaves a * * * descendant * * * surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so * * * devised, unless the will was duly executed at least 30 days before the death of the testator. * * * All property * * * devised contrary to the provisions of this section shall go to the * * * descendant * * * of the testator, if and to the extent that they would have taken said property * * * but for such devises * * *."

There is no provision similar to section 41 in Oregon law.

To subscribe to defendant's argument, we would have to assume that decedent feared that once he signed his will, he would not live for 30 days. There is no evidence at all that he had any such thoughts, despite the fact he survived the execution of the will

for only 12 days. One of the letters he wrote to his daughter after he took the property to Oregon spoke of relief at having gotten it away from "vultures" he seemed to think were after his property in California. From others of his letters it appears such "vultures," in his mind, were more likely individual acquaintances than anyone or anything else. We cannot engage in the speculation which defendant's argument leads us into.

■ Decedent did not establish residence in Oregon, and we find no evidence that he intended to make Oregon his home. He had the will sent to him in California, and he executed it there. He had already given his stocks, which represented about one-half of his estate, to his daughter, effective on his death. The California real property represented between one-fifth and one-fourth the value of the balance of his estate. He lumped it with the personal property, mostly cash, located in Oregon, all in one provision of one trust. The law applicable to the real property generally is the law of its locus. Restatement (Second) Conflict of Laws 48, § 239 (1971). The traditional test used to determine whether the public policy of the forum prevents the application of otherwise applicable conflict of laws principles is whether application of the foreign law will violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the commonweal. *Lilienthal v. Kaufman*, 239 Or 1, 11, 395 P2d 543 (1964). *See also, Casey v. Manson Constr. Co.*, 247 Or 274, 428 P2d 898 (1967). Decedent's interests, all except the personal property he left in Oregon, were in California. He executed his will there. The beneficiaries of the trust he attempted to create were there and in Illinois. Oregon has much less significant relationship with the

estate than does California. California courts have held that personal property of a nonresident that is located in California is subject to the restrictions of section 41. *Estate of Sloane,* 171 Cal 248, 152 P 540 (1915); *Estate of Lathrop,* 165 Cal 243, 131 P 752 (1913). Thus, California construes section 41 as being a strong part of that state's public policy. *See also Estate of Graham,* 63 Cal App 41, 218 P 84 (1923). Application of California law will not violate any strong public policy of Oregon, any fundamental principle of justice, any prevalent conception of good morals or deep-rooted tradition. Therefore, we apply Restatement (Second) Conflict of Laws § 239, supra, and Cal Probate Code § 41.

The personal property was lumped with the real property. In *U.S. Nat. Bank v. First Nat. Bank,* 172 Or 683, 142 P2d 785, 143 P2d 909 (1943), it was said that if part of a will is invalid, and part valid, the valid part should be upheld. In 94 CJS 937, Wills § 151 (1956) it is said the "* * * invalidity of a provision as to personalty does not necessarily affect a provision as to realty, or vice versa * * *." However, those authorities refer to separate provisions in a will—here, we have a single provision. The general rule is that the law of the domicile governs disposition of personal property. Restatement (Second) Conflict of Laws 125, § 264 (1971). If the testator had expressly indicated his intention that the law of Oregon should apply, we would be more impressed with defendant's cause with reference to the trust insofar as it applies to the personal property.[1] But implication that he had

---

[1] If a testator leaves personal property in a state, other than his domicile and expresses an intention that the law of its locus shall apply to its devise, such will be done—Harrison v. Nixon, 34 US (9 Pet) 483, 9 L Ed 201 (1835).

such an intention can be based only on speculation. We hold that California law applies in construing all of the substantive provisions of the will. After full consideration of all of defendant's arguments, we conclude that application of Cal Probate Code § 41 invalidates the entire charitable portion of the trust.

(1b) A spendthrift clause was included in the will, applicable to all beneficiaries, including decedent's daughter. Does this require that the trust be effective for her life with a vested interest in her in the remainder upon her death, or does the invalidity of the charitable trust also take down the trust for the daughter? The fact that the daughter has such a complete interest in the trust corpus does not act to merge the life interest with the remainder. The rule in Shelley's case is abolished as to wills in Oregon and California. ORS 112.345; Cal Civil Code § 779 (West 1955).

The editor in Annotation, 91 ALR 1084, 1085-86 (1934) says:

> "* * * [T]he courts have been practically unanimous in holding that the fact that the spendthrift or his heirs take the corpus at the termination of the trust does not render the trust invalid * * *."

This rule appears to apply, even if all beneficiaries consent to termination. *See* 3 Scott, Trusts 2454, § 337.2 (1956). California follows this rule. *Estate of Balyeat,* 268 Cal App 2d 556, 562 n 6, 74 Cal Rptr 120 (1968); *Fletcher v. Los Angeles Trust etc. Bank,* 182 Cal 177, 179-80, 187 P 425, 426 (1920). The central question in this regard is whether dissolution of the trust would defeat the main purpose or only an incidental purpose of the decedent.

Ascertaining the intention from a reading of the will itself, we think the main purpose was to provide scholarships to worthy, poor students, after the daughter was, as an incident, assured such financial security as could be provided by the assets.

He had given $31,883.28 in stocks to his daughter. The balance of his estate, in roughly equal value, he left in such a way that if the daughter should be in dire need as she grew older, it could be used, income and principal, to care for her emergencies. If no emergencies occurred, the income from the remainder would go to scholarships, which was the main purpose for the trust, as distinguished from the total disposition of his assets. The spendthrift and discretionary aspects of the trust obviously are devices to insure as much capital as possible, consistent with his daughter's security, remaining in the trust on the daughter's death to be used for the purpose of scholarships. Inasmuch as this purpose is defeated by application of Cal Probate Code § 41, there would have been small reason for the testator to have created a spendthrift trust for his daughter, the effect of which would have been, in all likelihood, to deny her the benefit of the trust property during her life. There is no intimation that there were any other likely objects of the testator's bounty.

■■ The California Supreme Court has held:

"* * * [The court should] ascertain what the testator would have intended had he foreseen a partial failure of his express plan. [Citations omitted.] Decisive weight is given the judicially construed intention of the testator * * *." *Estate of Michelletti*, 24 Cal 2d 904, 910, 151 P2d 833 (1944).

In *Estate of Balyeat,* supra, the California Court of Appeals quoted 4 Witkin, Summary of California Law 2960-61, Trusts § 76 (7th ed 1960):

> "* * * 'The theory on which the courts order termination is that there is no further reason to continue the trust * * *.' " 268 Cal App 2d at 562 n 6.

However, the California Probate Code provides:

> "* * * A will is to be construed according to the intention of the testator. Where his intention can not have effect to its full extent, it must have effect as far as possible * * *." Cal Probate Code § 101.

> "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy * * *." Cal Probate Code § 102.

In applying these statutory provisions, in *Davenport v. Davenport Foundation,* 36 Cal 2d 67, 222 P2d 11 (1950); *Estate of Plaut,* 27 Cal 2d 424, 164 P2d 765 (1945); *Estate of Heard,* 25 Cal 2d 322, 153 P2d 553 (1944); *Estate of Troy,* 214 Cal 53, 3 P2d 930 (1931), the California courts have, in effect, said that if the valid and invalid provisions of the will are so interwoven that the invalid ones cannot be eliminated without changing the main scheme of the testator, the trust must fall. From our analysis of the trust provisions of the will, we conclude that this result applies in the case at bar.

■ (2) The action was not commenced within the six-month statute of limitations for contesting a will in Oregon. ORS 115.180. The Oregon law is silent as

to whether an action, such as this, seeking to invalidate a portion of a will because of a restriction on charitable gifts is governed by the statute of limitations. However, the California courts have held that such an action is not a will contest and therefore not subject to California's six-month statute of limitations on will contests. *Estate of Moran,* 122 Cal App 2d 167, 264 P2d 598 (1953). We think the analysis of the California court is appropriate to the Oregon limitation situation as well as the California situation. We therefore hold that this action is not barred by ORS 115.180.

■ (3) The probate court has authority to entertain an action for a declaratory judgment. ORS 28.020; 28.040; 111.095. There is a very real and justiciable controversy.

The trial court held that the estate should be distributed to plaintiff under Oregon's intestacy statutes. ORS 112.015; 112.045(1). We have held that California's statutes apply. However, the result is the same under either code. See Cal Probate Code § 222 (West 1956) and the last sentence of Cal Probate Code § 41 (West 1956) quoted supra.

Affirmed.