548 P.2d 31

Virginia Bates **SAFLEY**, Administratrix
C.T.A. of the Estate of Wells Bates,
Deceased, Appellant,

v.

Nellie V. **BATES**, H. S. Dunbar and the Valley National Bank of Arizona, a National Banking Association, Appellees.

No. I CA–CIV 2827.

Court of Appeals of Arizona,
Division 1.

April 6, 1976.

Rehearing Denied May 14, 1976.
Review Denied June 8, 1976.

Favour & Quail, P. A. by John M. Favour, Prescott, for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellee Nellie V. Bates.

Cavness & DeRose by Jack C. Cavness, Phoenix, for appellee H. S. Dunbar.

Wolfinger & Lutey, Ltd. by S. D. Lutey, Prescott, for appellee The Valley National Bank.

OPINION

HATHAWAY, Judge.

This litigation centers around the nature of property belonging to appellant's decedent and his spouse, Nellie Bates, at the time of decedent's death. In other words, was it community property as claimed by appellant and therefore one-half thereof includible in decedent's estate, or was it joint tenancy property and therefore belonging to Nellie Bates by operation of law? The case was tried to the court, sitting without a jury, and judgment was entered in favor of appellees declaring that appellant, decedent's personal representative, take nothing by her complaint.

Appellant's complaint sets forth three causes of action: (1) against all appellees with respect to an indebtedness of appellee Dunbar which was placed for collection with Valley Bank; (2) against Nellie Bates as to a 1966 payment on a note which was a community asset; and (3) against Nellie Bates with respect to certain community personal property. Appellant asked the court to require Mrs. Bates to account for one-half of the alleged community assets and to pay the decedent's share to his estate.

The pertinent facts are as follows. The decedent was the husband of Eva Bates from 1924 until 1950, and appellant and her brother, issue of this marriage, are decedent's only children. In 1951, the decedent married appellee Nellie Bates. In 1960, the decedent and Nellie sold a ranch which had been purchased by them a few years previously. The ranch was sold for $175,000, payable $45,000 in cash and the balance by a promissory note in the principal sum of $130,000, payable to Wells Bates and Nellie Bates, his wife, in annual installments of $13,000 each plus accrued interest at the rate of 5% annum. We shall hereinafter refer to this note as the Ranch note. There is no dispute as to the character of the Ranch note—it was community property.

In 1958, the decedent executed his will, leaving his entire estate to his two children.

In 1965, Wells and Nellie loaned $19,000 to appellee Dunbar. To provide the funds for the loan, Wells and Nellie withdrew $9,000 from their Valley National Bank joint account and borrowed an additional $10,000 from the bank. Wells and Nellie maintained a joint bank account from the time they were married. Dunbar executed a promissory note (which was never produced) and a real estate mortgage dated December 27, 1965. The mortgage reflects the indebtedness as an obligation to the community. Mr. Dunbar sold the mortgaged property under a contract of sale which was placed in escrow with the Valley National Bank.

In August 1966, prior to the sale, Dunbar met with the decedent and his wife for the purpose of obtaining an extension on the $19,000 note. It was agreed that the interest rate be reduced from 8% to 7% and on August 27, 1966, Dunbar executed a new promissory note payable to the order of Wells and Nellie Bates, as joint tenants with the right of survivorship, in the face amount of $16,000. This note was to remain secured by the real estate mortgage executed on December 27, 1965.

The record reflects that the new promissory note was placed in escrow as part of the documents pertaining to Mr. Dunbar's sale of the real property. The sum of $3,000, the difference between the face amount of the December 1965 note and the August 1966 note, plus accrued interest, was deposited to the Bates' joint tenancy account by the bank. The 1966 note was placed with the bank for collection and payments were to be made through the bank to the Bates' account in the bank.

Just prior to decedent's death, the annual payment on the Ranch note was made and a check payable to the order of Wells and Nellie Bates in the sum of $16,900 was endorsed by Nellie because her husband was ill and deposited to the joint tenancy bank account. Also, on August 12, 1966, Nellie Bates withdrew $1,000 from the joint bank account and deposited it in a separate account which she opened at that time. This

transaction was at the direction of the decedent. According to appellee, the reason her husband directed her to put the $1,000 in a separate account was that "[h]e was worried about me putting some money apart for myself" because his daughter refused to promise him "that she would not have any lawsuits after he was gone."

The trial court, in ruling that appellant was not entitled to an accounting, apparently concluded that the Dunbar note, the monies on deposit in the bank, and personal property were not community property. Appellee in her brief concedes that the personal property was community property and that the estate is entitled to one-half thereof. We therefore need consider only whether the evidence was sufficient to support a finding that the Dunbar note and the joint tenancy bank account belong to Nellie Bates as the surviving joint tenant. Appellant contends the evidence was insufficient to overcome the presumption in this jurisdiction that property acquired by a spouse during coverture is community property.

■ The right of a husband and wife to hold property as joint tenants in derogation of their community property status is recognized provided it clearly appears that the spouses agreed the property should be taken in that manner. McClennen v. McClennen, 11 Ariz.App. 395, 464 P.2d 982 (1970). As to the joint tenancy bank account, the signature card executed by Wells and Nellie Bates recited:

"Each of us hereby authorize any one of the undersigned to endorse and deposit in this account any checks or other items payable to any of us. Each of us agrees with the other one and with the VALLEY NATIONAL BANK that all sums heretofore or hereafter deposited in this account by us, or any of us, or by any other party, and all accumulations thereon, are and shall be owned by us as joint tenants with right of survivorship, and not as tenants in common, and shall be subject to withdrawal by any one of us or the survivor or survivors of us, sub-ject to the provisions of all laws in force."

■ We are of the opinion that the effect of the foregoing agreement was to convert the community ownership of money deposited in the account into joint ownership and upon the death of Wells, title to the money became absolute in Nellie as the surviving owner and not as the surviving member of the community. In re McCoin's Estate, 9 Cal.App.2d 480, 50 P.2d 114 (1935). As stated in Brown v. Navarre, 64 Ariz. 262, 169 P.2d 85 (1946), quoting from Matthew v. Moncrief, 77 U.S.App. D.C. 221, 135 F.2d 645 (1943), at 648:

"'. . . when such intention is expressed in a written instrument which says, in plain terms, that the deposit is the joint property of both, and that it is to go upon the death of either to the survivor such an expression of intention is conclusive, and preclusive of all parol contradiction, except upon the grounds of fraud or mistake." 64 Ariz. at 271-272, 169 P.2d at 91.

We note parenthetically that A.R.S. § 14-6104(A) specifically provides that sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. Although the subject bank account was opened prior to the effective date of A.R.S. § 14-6104, Laws 1973, Ch. 75 § 29, provides:

"5. any rule of construction or presumption provided in this Act applies to instruments executed and multiple-party accounts opened before the effective date unless there is a clear indication of a contrary intent."

Appellant's reliance on O'Hair v. O'Hair, 109 Ariz. 236, 508 P.2d 66 (1973), is misplaced. In O'Hair, separate property of one spouse was deposited in a joint tenancy bank account and when the parties were divorced, the question of their respective interests in the bank account was adjudi-

cated. Under those circumstances, it was necessary to ascertain the intention of the depositor and the mere form of the bank account was not sufficient to establish the depositor's intent to give another joint interest in or ownership of the deposit. In other words, the form of the deposit agreement was not conclusive as to the depositor's intention. In the case at bench, however, there being no clear and convincing evidence of an intention when the account was established that it be other than joint tenancy with right of survivorship, the parties' written agreement is conclusive by virtue of A.R.S. § 14–6104(A). Therefore all sums in the account at the time of the decedent's death belonged to his surviving spouse and she was not required to account to the decedent's estate for any portion thereof. The sum of $1,000 withdrawn from the joint tenancy account at the decedent's direction prior to his death was likewise a non-community asset.

 As to the Dunbar note in the sum of $16,000, payable to "Wells Bates and Nellie Bates, husband and wife, or order, not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship," appellant makes much of the fact that the note itself contains no recitation, as in real property transactions, of the Bates' acceptance as joint tenants with right of survivorship. However, acceptance may be shown by proper extrinsic evidence. *McClennen*, supra. Mrs. Bates testified to a conversation between the decedent and Mr. Dunbar concerning the new note. According to her, the decedent told Mr. Dunbar that he wanted the note made out in such a way that if anything happened to him, Nellie would get whatever it was that Mr. Dunbar owed. Also, decedent stated that he did not care who Dunbar sold the property to so long as Nellie was protected and would get the benefit of the payments.

According to Dunbar's testimony, the decedent instructed him to have the note prepared "so that Nellie wouldn't have any trouble." The evidence further reflects that the form of the note must have been acceptable to Mr. and Mrs. Bates as they received a letter from Dunbar's attorney who had prepared all the documents for the sale of Dunbar's property, including the promissory note to Mr. and Mrs. Bates. A letter from him dated September 15, 1966, recited:

"I am enclosing herewith a copy of a Promissory Note dated August 27, 1966, in the principal sum of $16,000.00 with interest thereon at the rate of 7% per annum on the unpaid balance, payable to your order as joint tenants with right of survivorship which has been executed by H. S. Dunbar. . . . This note remains secured by that real estate mortgage which Mr. Dunbar executed on December 27, 1965, . . ."

We believe the foregoing was sufficient evidentiary support for the trial court's conclusion that the parties intended the Dunbar note to be joint tenancy property.

For the foregoing reasons, we affirm the judgment insofar as it adjudicates appellants's claim with respect to the Dunbar note, the joint tenancy bank account and appellee's separate bank account, and the 1966 payment on the Ranch note. In view of appellee's confession of error with respect to household furniture, personal effects of the decedent, the decedent's silver coin collection and personal loans outstanding at decedent's death, we remand with directions to require Nellie Bates to account for one-half thereof to appellant.

HOWARD, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).