Argued and submitted May 11,
affirmed as modified with instructions December 1, 1981

CROWHURST et al,
*Respondents,*
*v.*
BUTTON et al,
*Appellants.*

(No. 26857, CA 19281)

636 P2d 1023

Robert P. VanNatta, St. Helens, argued the cause for appellants. With him on the briefs was VanNatta & Petersen, St. Helens.

Mark Irick, Dallas, argued the cause for respondents. With him on the brief was Hayter, Shetterly and Irick, Dallas.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

**YOUNG, J.**

Plaintiffs seek a declaration of the relative rights and interests of the parties in a parcel of real property located in Polk County. Defendants filed a general denial. The case was tried by the court, sitting in equity.

The trial court decreed that plaintiffs were the "legal owners" of the subject real property and that defendants Button (Buttons) had a security interest in the property "in the nature of a mortgage" and awarded plaintiffs a judgment against Buttons for $1,927.85. Buttons appeal from those provisions of the decree.[1] We review *de novo,* ORS 19.125(3), and affirm as modified.

In 1970, plaintiffs purchased the property under a title-retaining contract, requiring monthly installment payments. In 1978, the vendor declared plaintiffs to be in default because of delinquent payments and threatened foreclosure. Buttons offered plaintiffs financial help to avoid foreclosure, and plaintiffs accepted the offer. Buttons paid the delinquent installments of $452 and agreed to pay all future installments until the property was sold, but "not to exceed 12 months." Plaintiffs then assigned their vendees' interest in the contract to Buttons as security for payments made or to be made by Buttons on the contract. Based on the agreement, once the property was sold, Buttons were to be paid all their advances plus interest.[2]

In May, 1979, defendants Buchholzes executed an earnest money receipt offering to purchase the property. Buttons accepted the offer and signed the receipt as sellers. Plaintiffs did not sign the receipt, but they knew the terms

---

[1] The decree also provided that the Buchholzes were equitable owners of the real property based on the land sale contract between Buttons as seller and Buchholzes as purchasers, discussed later.

[2] The agreement between plaintiffs and Buttons consisted of a promisory note dated September 1, 1978, in the principal sum of $452. The note provided,

"* * * for the security of this note the property above described is to be assigned to [Buttons] to draw 10 percent interest on $452 and whatever has * * * to be added to the note as monthly payments to the deed owner [contract vendor] and other costs."

An assignment of the plaintiffs' interest in the contract was executed and recorded.

of the sale and orally agreed to it. Thereafter, Buttons paid plaintiffs' vendor the remaining contract balance of $16,595.85 and received the deed from the vendor, in which Buttons were the named grantees. Buttons and Buchholzes entered into a formal contract of sale of the property in June, 1979.[3] Buchholzes were entitled to possession of the property on July 8, 1979, but plaintiffs refused to vacate. Buchholzes brought an FED action, and plaintiffs were evicted. Buchholzes claimed they were out $1,927.85 for legal fees and other expenses. On demand by Buchholzes, Buttons, without notice to plaintiffs, paid the amount demanded. Buttons, in turn, withheld the $1,927.85 from plaintiffs' share of the monthly contract payments made by Buchholzes. This action followed.

Buttons dispute the trial court's resolution of the rights and interests of the parties in the Button-Buchholz contract and the underlying real property.[4] Their principle claim in this appeal is that the trial court erred when it denied Buttons the right to withhold the $1,927.85 paid to Buchholzes and awarded plaintiffs judgment for that amount.

■     Plaintiffs and Buttons agree that, when plaintiffs assigned their vendees interest in the 1970 contract to Buttons, they all intended the assignment to be only security for Buttons' payments on the contract. A contract vendee's interest is "mortgageable." *Sanders v. Ulrich,* 250 Or 414, 416, 443 P2d 231 (1968); *Sheehan v. McKinstry et al,* 105 Or 473, 485, 210 P 167 (1922). Buttons argue they acquired legal title to the real property when they paid the balance owing on the 1970 contract and received the deed

---

[3] A portion of the Buchholzes down payment was used to reimburse Buttons for the payments made on the 1970 contract to avoid foreclosure and subsequent monthly installment payments. Essentially, Buttons were reimbursed from the down payment for all their advances except for the final contract payment. The parties do not dispute the division of the down payment or that Buttons are entitled to be repaid their final contract payment and other nominal expenses from the monthly installment payments due from the Buchholzes. Under the Buchholzes contract the monthly payments were $500. The plaintiffs and Buttons agreed that from the monthly payment, Buttons would receive $200 (plus a $4.50 service charge for handling the payments) until their advances were paid and the plaintiffs the balance of the monthly payment. The decree so provides.

[4] Buttons contend they hold legal title, subject to Buchholzes vendees interest and "subject to [plaintiffs'] right to get some of the money out of the proceeds of the sale." Buttons have cited no authority to support their contentions.

from plaintiffs' vendors. That is correct, but they held that title as trustees for plaintiffs.

Oregon cases have quoted with approval 54 Am Jur, "Trusts", 167, § 218, now 76 Am Jur2d, "Trusts", 446, § 221, defining a constructive trust as,

> "* * * a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, or *who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not,* in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice." (Emphasis added.) *Marston v. Meyers, et ux,* 217 Or 498, 509, 342 P2d 1111 (1959).

*See also, Fouchek et al v. Janicek,* 190 Or 251, 261, 225 P2d 783 (1950); *Alexander v. Central Ore. Irrig. Dist.,* 19 Or App 452, 465-66, 528 P2d 582 (1974).

■ "A constructive trust is simply a remedial institution invented by equity to avoid unjust enrichment in situations where there is no other available equity remedy." *Belton v. Buesing,* 240 Or 399, 409, 402 P2d 98 (1968); *see also, Alexander v. Central Ore. Irrig. Dist., supra,* 19 Or App at 474.[5]

■ In the present case, plaintiffs' vendor held the legal title as security for the payment of the balance of the contract purchase price. When Buttons paid the balance and received the deed from the vendor, Buttons acquired that which the vendor possessed and was able to convey, i.e., a naked legal title, and they hold it as constructive trustees for plaintiffs as beneficiaries. To hold otherwise would be unjust and inequitable and give Buttons more than they had bargained for.

---

[5] Restatement, Restitution § 160 (1937) defines a constructive trust as

> "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

Comment c to § 160 states:

> "A constructive trust is imposed upon a person in order to prevent his unjust enrichment. To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him."

The next question is whether Buttons were entitled to offset, against payments due plaintiffs from the Buchholz contract, the $1,927.85 paid by Buttons to Buchholzes as reimbursement for expenses paid by Buchholzes as a result of the FED action. If that question is answered in the affirmative, then the judgment in favor of plaintiffs and against Buttons must be vacated. When it came time for Buchholzes to take possession of the property as contract vendees, plaintiffs chose not to vacate. Buchholzes brought an FED action against plaintiffs and secured possession. Neither the pleadings, the testimony nor the exhibits here lend themselves to a precise review. Buttons claim they reimbursed Buchholzes for their expenses because Buttons had agreed to a day certain for possession and plaintiff's wrongful position prevented that from happening. Buchholzes demanded reimbursement from Buttons for various expenses ranging from attorney fees and costs, moving and storage bills, an extra month's rent and a flea bomb. Buttons recognized potential liability to Buchholzes and paid them without the knowledge or acquiescence of plaintiffs.

The complaint alleges plaintiffs' entitlement to payment from Buttons of $1,927.85 as in an action on an account. Button's answer denied the allegations. After the parties had rested, the trial judge stated:

> "Now, let's talk about the expenses of the F.E.D. I'm going to deny those matters also as credits or offsets simply because of this: That the [plaintiffs] neither agreed to pay nor authorized or was ever made any demand upon for payment of these expenses, and I find that Mr. Button in paying these matters acted as a volunteer and cannot be expected to claim — cannot be allowed to claim those as a credit against the obligation that he owes — that is due and owing the plaintiffs Crowhursts.
>
> "Now, there may be a claim by the Buchholzes against Crowhursts for the F.E.D., costs of attorney's fees, sheriff's service fees, those matters, but they are not proper credits or offsets in this proceeding to declare the interest of parties under contracts of sale."

We are not certain what the trial judge intended. The statement that "Buchholzes" may have a claim against plaintiffs for F.E.D. expenses would make more sense if it referred to "Buttons" as having the possible claim. In any

event, it appears the trial judge was of the opinion that the present action was not the forum in which to decide "credits or offsets," and we agree. Recoupment, setoff and a counter-claim[6] were not pled. *Rogue River Management Co. v. Shaw,* 243 Or 54, 411 P2d 440 (1966).

■  · On appeal, Buttons raise for the first time that principles of common law indemnity, *res judicata* or collateral estoppel apply. They must be pled and proved, but they were not. *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 493 P2d 138 (1972); *Furlong v. Tish,* 189 Or 86, 95, 218 P2d 476 (1950); *Long v. Storms,* 50 Or App 39, 622 P2d 731, *rev den* 290 Or 727 (1981).

Affirmed as modified. With instructions to enter an amended decree providing that plaintiffs are the beneficial owners and Buttons the trustees of the title to the real property.

---

[6] On the morning of trial Buttons tendered an amended answer and counter-claim which was rejected by the court because it was not timely. Buttons did not appeal that ruling.