Argued and submitted March 7, affirmed November 12, 1986

In the Matter of the Estate of
Clifford C. Jacobs, Deceased.

JACOBS,
*Appellant,*

*v.*

JACOBS,
*Respondent.*

(2315; CA A35908)

728 P2d 89

George W. Kelly, Eugene, argued the cause and filed the briefs for appellant.

David Gernant, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this probate proceeding, the personal representative appeals a trial court ruling denying his petition that respondent be ordered to deliver to the estate certain assets that she had retained after her husband's death. We affirm.

The decedent, Clifford Jacobs, died in Arizona on July 4, 1982. He was a resident of Enterprise, Oregon, at the time of his death but had been spending winters in Arizona with his wife for a number of years. His survivors include his widow, Helen, a son, Donald Jacobs, and a daughter, Helen Lee Ward. Clifford and Helen had been married for approximately 11 years; it was a second marriage for both. They had entered into an antenuptial agreement[1] and decedent left a

---

[1] The antenuptial agreement was dated October 1, 1971, the day before their wedding. It did not require either party to draw up a will in a certain way and did not prevent them from changing their minds. It provided:

"This antenuptial contract, made and entered into at The Dalles, Oregon, by and between Clifford C. Jacobs, of Enterprise, Oregon, a widower, party of the first part, and Helen I. Marks, of The Dalles, Oregon, a widow, party of the second part, Witnesseth:

"That the party of the first part and the party of the second part contemplate legal marriage, under the laws of the State of Oregon, and it is agreed: That all the properties of any name or nature, real, personal, or mixed, wherever they may be found, belonging to the party of the first part before marriage shall be and remain forever his personal estate, and that this shall include all interest, rents, and profits which may in time accrue, or result in any manner from increase in value, or be collected for the use of the same in any way.

"And it is further agreed that all properties of any name or nature, real, personal, or mixed, wherever they may be found, which belong to the party of the second part before marriage, shall be and remain, forever her personal estate, and that this shall include all interest, rents, and profits which may in time accrue, or result in any manner from increase in value, or be collected for the use of the properties in any way.

"And it is agreed between the party of the first part and the party of the second part to this agreement that each will sign with the other all title papers, deeds, or other papers necessary to transfer property when sold to a purchaser as such title papers are usually executed by a man and wife in the State of Oregon and that this courtesy shall be prompt at any time, and in any place.

"And it is further agreed by the party of the first part that he does and will from his own personal estate assume the necessary expense of the support and maintenance of the party of the second part.

"And it is further agreed that nothing herein shall be construed to be a bar to either party's giving any property of which he or she may be possessed to the other party by will or otherwise. It is understood that each party to this agreement shall control his or her own personal estate, as described herein, and do with the properties whatsoever he or she wishes and wills, by his or her orders or directions,

will[2] dated August 13, 1976. The trial court, in a detailed and well-considered opinion, found that, because the assets mentioned in the petition for turnover were jointly owned by Clifford and Helen with the right of survivorship, they passed to Helen at the time of Clifford's death.

The appeal focuses on decedent's intent and, on *de novo* review, we are presented with the same question confronted by the trial court: whether the assets passed to Helen at Clifford's death by virtue of the joint tenancies with right of survivorship or whether they belonged to the estate under operation of the will. The disputed assets include certificates of deposit in Oregon and Arizona, a checking account in Oregon, real estate in Arizona and stocks and bonds purchased through an Arizona broker.

■■■ Helen and Clifford purchased a house in Sun City, Arizona, during their marriage. Because the law applicable to real property is generally the law of its locus, *Buresh v. First Nat'l Bank*, 10 Or App 463, 500 P2d 1063 (1972), we apply Arizona law to determine ownership of the house. In that state, there is a long-recognized general rule that all property acquired during marriage is community property. *National Industries v. Republic Nat. Life Ins. Co.*, 677 F2d 1258 (9th Cir 1982). In spite of that presumption, Arizona law recognizes the right of married persons "to hold property as joint tenants in derogation of their community property status." *National*

---

or by testament, the same as either could or would do if no marriage relation existed between them."

[2] The relevant portion of Clifford Jacobs' will provides:

"THIRD: I give, devise and bequeath unto my wife, HELEN I. JACOBS, all my furniture and any automobiles or motor vehicles which I may own at the time of my death.

"FOURTH: All the remainder of my property, whether real, personal or mixed, I give to my Trustee, hereinafter designated, to collect and receive the income therefrom and to pay or apply the net income therefrom not less frequently than quarterly to my wife, HELEN I. JACOBS, during her lifetime. Upon the death of my wife, all the balance of the corpus of this Trust, I give, devise and bequeath unto my two children, DONALD C. JACOBS and HELEN L. WARD, share and share alike. Upon the death of my wife, I direct my Trustee to pay and distribute immediately the balance of principal, together with any accumulated income not heretofore distributed."

Because this case involves a petition for turnover rather than a will contest, the contents of the will are relevant only as an expression of Clifford's intent at the time when the will was prepared.

*Industries v. Republic Nat. Life Ins. Co., supra,* 677 F2d at 1266; *see also In re Baldwin's Estate,* 50 Ariz 265, 71 P2d 791 (1937); *Safley v. Bates,* 26 Ariz App 318, 548 P2d 31 (1976). If that is intended, not only is it necessary that the deed contain language creating a joint tenancy, but there also must be a clear showing that both spouses agreed and intended that the property be held as a joint tenancy. ARS § 33-431B provides for the creation of joint tenancies with the right of survivorship in real property:

> "A grant or devise to two or more persons may, however, by express words vest the estate in the survivor upon the death of a grantee or devisee."

In Arizona, if property is held in joint tenancy, the survivor becomes the sole owner of the property upon the death of a spouse; if the property is held as community property, the decedent's one-half share may be disposed of by will and passes to the estate. *In re Baldwin's Estate, supra.*

■ In the present case, the property was jointly held with rights of survivorship. The escrow agreement read: "Clifford C. Jacobs and Helen I. Jacobs, his wife, as joint tenants with right of survivorship." Both of them signed that agreement. The deed states "to Clifford C. Jacobs and Helen I. Jacobs, his wife, not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship." Helen and Clifford both signed the deed under the words "received and approved." We find that both agreed that the property would be held as a joint tenancy with the right of survivorship. Helen, therefore, became sole owner of the house at the time of Clifford's death.

■ Helen and Clifford also had bank accounts and certificates of deposit in Arizona and Oregon. In both states, the applicable statutes pertaining to checking accounts and certificates contain virtually the same language. ORS 708.600(1) provides:

> " 'Account' means a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit and share account."

ARS § 14-6101 mirrors that language. The Oregon assets consisted of a checking account valued at approximately

$8,000 and certificates of deposit worth $70,000. The checking account was jointly owned with the right of survivorship and was made out to Clifford, Helen and Donald Jacobs. All signed the signature card. The certificates were made payable to "Clifford C. Jacobs or Helen I. Jacobs." They also owned certificates in Arizona valued at $60,000. ORS 708.616(1) and ARS § 14-6104(A) both provide:

> "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created. * * *"

Assets in the account at the time of the death belong to Helen, unless there is clear and convincing evidence of a contrary intent at the time the account was created. Additionally, ORS 708.616(5) and ARS § 14-6104(E) provide that the right of survivorship cannot be changed by will: "A right of survivorship arising from the express terms of the account * * * cannot be changed by will."

The personal representative contends that there is clear and convincing evidence that decedent intended his property to go to his children in equal shares and that his wife was to receive only an interest for life. He also asserts that decedent's will and the antenuptial agreement express that intent. The primary evidence that he offers is testimony by decedent's attorney about a conversation which he had with decedent about ten months before his death. At that time, decedent reportedly stated that he wanted his property to go to his children. However, that evidence does not establish that Clifford did not intend for the joint accounts to go to Helen.

Decedent either purchased or converted over 95 percent of his property to joint tenancy with the right of survivorship during the marriage. His attorney testified that he was a very astute businessman who owned property, ranches and a store and would have known the difference between a joint account and one in his own name. He suggested that decedent could have changed his mind, decided that he had already given his children enough and concluded that it was time to take care of himself and his wife. He had given his son a home and a business and had made numerous gifts to his daughter. He had conducted his business without advice from

others. Helen knew little about his business affairs. She testified that decedent began placing their assets into joint tenancy with right of survivorship after concluding that she would not have enough money to live on from a trust that he had established. We conclude that, under the law of joint tenancy, decedent's accounts and certificates passed to his surviving widow.

■ Clifford and Helen also owned stocks with a market value of $42,000, purchased through a broker in Arizona. We need not decide whether Arizona or Oregon law applies in determining the proper disposition of the stocks, because we reach the same result under both laws. Under Arizona law, a husband and wife have the right to hold personal property as joint tenants in derogation of their community property status, so long as it is clear that they agreed to hold the property as joint tenants. *Safley v. Bates, supra.* In Oregon, ORS 105.920 authorizes the creation of joint tenancies with the right of survivorship for personal property. *See Sautter v. Coffey,* 283 Or 303, 311-12, 584 P2d 245 (1978); *Gilbert v. Brown,* 71 Or App 809, 817, 693 P2d 1330 (1985). Under that statute, a joint tenancy may be created only by an express declaration that the interest is a joint tenancy.

■ The Oregon Supreme Court noted in *Williams v. Mallory,* 284 Or 397, 401, 587 P2d 85 (1978) (quoting Wellman, *The Joint and Survivor Account in Michigan—Progress Through Confusion,* 63 Mich L Rev 629, 645-46), which dealt with the rights of survivorship in joint savings accounts:

> " 'The opinions reflect the view that people who use joint and survivorship accounts usually intend the survivorship benefits they express. When such an account is intact at the donor depositor's death, the estate of the donor, if unable to show fraud, undue influence, or lack of capacity, will probably not prevail if all it can show is that a reason other than to confer benefits at death attended the opening of the account. Probably it must *also* be shown that it would have been capricious or highly unusual for the decedent to have wanted the death benefits to go to the survivor in light of the decedent's circumstances, the pattern of his family relationships, and the terms of his other testamentary directions.' (Emphasis in original.) * * *"

Here, a statement of the account was introduced as evidence instead of the original stock certificates. The account is made

out to "Mr. Clifford C. Jacobs and Mrs. Helen I. Jacobs JTWROS," which indicates that the securities were held as a joint tenancy with right of survivorship. We conclude that Helen became the sole owner of that property upon Clifford's death.

Affirmed.