Argued and submitted June 3, 1993, reversed and remanded in part with
instructions; otherwise affirmed January 26, 1994

David L. KASSAHN,
Jesse L. Kassahn and John H. Kassahn,
*Appellants,*

*v.*

Mabel KASSAHN,
individually, and Mabel Kassahn,
Personal Representative of the Estate of
Jesse Arthur Kassahn, Deceased,
*Respondents.*

(91-CV-0110; CA A75484)
868 P2d 9

Robert T. Mautz argued the cause for appellants. With him on the briefs were W. Eugene Hallman and Mautz Hallman Baum & Hostetter.

Holly A. Preslar argued the cause for respondents. With her on the brief were Lynn M. Myrick, John E. (Jack) Davis and Myrick, Seagraves, Adams & Davis.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

This is an equitable proceeding against defendant, Mabel Kassahn, in both her individual capacity and as the personal representative of the estate of Jesse Kassahn. Mabel is the second wife of Jesse. Plaintiffs seek specific performance of a will contract between Jesse Kassahn and his first wife, Hortense. Plaintiffs also seek a constructive trust on property held jointly by Jesse and Mabel during their almost 20-year marriage. The trial court dismissed plaintiffs' complaint and entered judgment in favor of defendant. We review *de novo*, ORS 19.125(3); *Puziss v. Geddes*, 96 Or App 154, 158, 771 P2d 1028 (1989), and reverse and remand for entry of a judgment granting specific performance of the contract against the assets of Jesse's separate estate.

Jesse and Hortense Kassahn were married in 1932. At the time of the marriage, Hortense had a son, plaintiff John. Jesse never legally adopted John, but treated him as his son. During the marriage, plaintiffs Jesse, Jr. and David were born.

In 1968, Jesse and Hortense executed mutual wills, each leaving all property to the other and, on the death of the survivor, to plaintiffs in equal shares. Paragraph seven of their wills provided:

> "My spouse and I are executing similar Wills, and each Will is made in consideration of the making of the other Will. These Wills are joint, mutual and reciprocal to each other, and may not be revoked or altered by the survivor of us after death of the other."

According to plaintiffs, the "prime motivation" for the will contract was to prevent John from being disinherited if Hortense predeceased Jesse. Hortense died in 1970 in a gas explosion that destroyed the Kassahn home. Jesse was seriously injured in that explosion. At the time of her death, Hortense's probate estate consisted of some $17,000. Additionally, she and Jesse jointly owned unspecified real and personal property.

Following Hortense's death, Jesse received approximately $65,000 in settlement of the wrongful death action resulting from the gas explosion, and between $20,000 and $40,000 in fire insurance proceeds. In 1971, he married

Mabel, a longtime family friend. They were each 61 years old at the time of the marriage. Mabel was unaware of the 1968 will or its terms. Jesse's marriage to Mabel revoked his will by operation of law, ORS 112.305, and he never executed another will.

From the outset of their marriage, Mabel commingled her assets with Jesse's. They maintained a joint savings account and Mabel deposited $5,000 she had had in a personal savings account. She later added $20,000 from the sale of property to the joint account. She also brought a travel trailer and an automobile to the marriage.

Jesse and Mabel decided to build a new home on Jesse's property. Mabel contributed all of the proceeds from the sale of her home, which amounted to $13,000, and Jesse contributed $20,000. They held the home as tenants by the entireties.

In addition to the property held jointly with Mabel, Jesse carefully maintained a separate estate. He made loans and gifts to plaintiffs from those assets on various occasions after Hortense's death. It appears that the loans were never entirely repaid.

Jesse and Mabel were married for more than 19 years. During many of those years, Jesse was seriously ill and Mabel cared for him. Except for several months towards the end of Jesse's life, when Alzheimer's disease made in-home care impossible, they lived in the house they had built for the entire period of the marriage.

Jesse died intestate in 1990. His separate estate was admitted to probate and Mabel was appointed personal representative. Plaintiffs filed a claim against the estate, which was denied. They then brought this action seeking specific performance of the 1968 will contract between Jesse and Hortense. They also sought a constructive trust on the house Mabel and Jesse had built, and on Mabel and Jesse's joint savings account.[1]

---

[1] Neither the house nor the savings account was admitted to the probate estate. The account passed to Mabel outside the estate, because it was held in joint tenancy with a right of survivorship, ORS 708.616(1); *Jacobs v. Jacobs*, 82 Or App 333, 338, 728 P2d 89 (1986), and Jesse's death extinguished his interest in the house, leaving Mabel with an undivided interest in the whole as the surviving joint tenant by the entirety. *Wilde v. Mounts*, 95 Or App 522, 524, 769 P2d 802 (1989).

The parties agree that specific performance and imposition of a constructive trust are equitable remedies that are potentially available in this kind of case. They disagree about whether it is equitable to specifically enforce the contract against Jesse's probate estate and to impose a constructive trust on the house and savings account.

■ We address first the issue of a constructive trust on the house and the savings account. A constructive trust is a remedial device in equity to avoid unjust enrichment in situations where there is no other available equity remedy. *Crowhurst v. Button*, 54 Or App 989, 993, 636 P2d 1023 (1981). Plaintiffs argue that the trial court erred in refusing to grant their request for a constructive trust, because it results in unjust enrichment to Mabel. We disagree.

■■ At the time of Jesse's death, the house was valued at $135,000, and the savings account had assets of $45,000. Both Mabel and Jesse made substantial financial contributions to construction of the house. They lived in that house throughout their marriage, except when Jesse was in nursing home care at the end of his life. In the light of Mabel's personal and financial contributions to the house and marriage and the obvious affection that existed between Jesse and Mabel, we believe that there is no unjust enrichment in affirming the trial court's dismissal of plaintiffs' request for a constructive trust on the house. Similarly, in the light of Mabel's significant contributions to the joint savings account, the extensive commingling of that account over nearly 20 years, and the more than $35,000 paid out of that account to provide for Jesse's care and medical expenses, we conclude that plaintiffs are not entitled to a constructive trust as to it.

■ We next address whether the trial court erred in refusing to grant specific performance of the will contract against Jesse's estate. The parties agree that a contract embodied within a will is enforceable, *Irwin v. First Nat'l Bank*, 212 Or 534, 321 P2d 299 (1958), and that a contract existed between Hortense and Jesse.

■ The decision whether to grant specific performance is a matter of judicial discretion. *Shell Oil Co. v. Boyer*, 234 Or 270, 272, 381 P2d 494 (1963). In an action requesting specific performance, it is the function of the court to do full and

complete justice to the parties. *Cameron v. Benson*, 295 Or 98, 105, 664 P2d 412 (1983).

■        If Jesse's separate estate were to pass by intestate succession, as would occur as a result of the trial court's dismissal of plaintiffs' complaint, John would receive nothing. The evidence is uncontroverted that the primary motivation of the 1968 will contract was to assure that John would be treated equally with the other brothers for estate purposes. It is reasonable to conclude that Jesse maintained the separate estate to honor the will contract with Hortense, just as he maintained assets jointly with Mabel in recognition of his marriage to her. Refusal to enforce the will contract results in the disinheritance of John. We conclude that Jesse's separate estate was intended to benefit all three plaintiffs. Therefore, specific performance of the will contract is appropriate regarding the separate estate of Jesse.

Reversed and remanded with instructions to enter a judgment granting specific performance of the will contract against Jesse Kassahn's separate estate; otherwise affirmed.