Argued and submitted November 25, 1997, affirmed August 4, petition for review denied November 9, 1999 (329 Or 479)

ESTATE OF JAMES WYBURN TRESSEL,
through Gail A. Tressel,
Personal Representative,
*Appellant,*

*v.*

Kathryn M. TRESSEL;
Rodger Jordan;
and Edward D. Jones & Co.,
a corporation,
*Respondents.*

(95-CV-0230; CA A95419)

986 P2d 72

Charles Carreon argued the cause and filed the briefs for appellant.

Mark Lansing argued the cause and filed the brief for respondent Kathryn M. Tressel.

Walter L. Cauble argued the cause for respondents Rodger Jordan and Edward D. Jones & Co. On the brief were Christopher L. Cauble and Schultz, Salisbury, Cauble, Versteeg & Dole.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

KISTLER, J.

Armstrong, J., dissenting.

---

\* Kistler, J., *vice* Warren, P. J., retired.

## KISTLER, J.

Plaintiff sued to recover assets that James and Kathryn Tressel held in an account at Edward D. Jones & Co. (Jones & Co.). Plaintiff claimed that defendants had either converted or conspired to convert those assets. The trial court granted summary judgment in defendants' favor, and we affirm.

On September 19, 1984, the Tressels opened a brokerage account with Jones & Co. Rodger Jordan, the local representative for Jones & Co., spoke with the Tressels. Jordan explained that he typically "asked [new customers] questions to obtain information necessary to open the account," such as the persons' names, how the account was to be registered, Social Security numbers, and the like. He also asked "how they want [the account] registered as far as joint tenancy [with] right of survivorship, joint tenants-in-common." Jordan used the answers to fill out a document called a Customer Holding Sheet[1] as part of opening the account and also put the information into the computer. The computer provided him with an account number, which he recorded at the top of the Customer Holding Sheet.

Kathryn Tressel explained that when she and her husband set up their account with Jones & Co., they did so "with the clear understanding and intent that, upon the death of either one of us, the surviving spouse would become the owner." Although Kathryn could not remember whether they had signed any documents to that effect, she "clearly recall[ed] my husband and I instructing Rodger Jordan, the local agent for Edward D. Jones & Co., to place these accounts in survivorship ownership, so that the survivor of us would be the rightful owner of the accounts upon the passing of the other." Jordan agreed that the Tressels had directed

---

[1] Louis Branz, the counsel for Jones & Co., stated that Jordan had sent the home office in St. Louis a document, which Branz referred to as a "New Account Card and Customer Holding Sheet." When asked what Branz meant when he referred to a new account card, Jordan explained that he did not know. He added, however, that when he had gone through training for his job, the Customer Holding Sheet was called a "new account card" although "[t]he actual designation is 'Customer Holding Sheet.'"

him to set up their account as joint tenants with a right of survivorship.[2]

Jordan filled out the Customer Holding Sheet in accordance with the Tressels' directions. He placed the initials JTWROS next to the Tressels' names on the Customer Holding Sheet, to show that they held the account as joint tenants with rights of survivorship. He also included the other information they provided him on that sheet. When the Tressels opened their account, they placed no funds in it. The next day, they deposited cash into the account. They later used the cash to purchase a money market account and also to buy securities. The Tressels periodically received statements from Jones & Co. showing that they held their account as joint tenants with rights of survivorship.

James Tressel died in 1993. After his death, Kathryn asked that the assets in their account be transferred to a separate account in her name. She submitted the necessary paperwork to Jones & Co., and it complied with her request. The estate then filed this action claiming that Kathryn Tressel had converted the assets in the account and that Jordan and Jones & Co. had conspired with her. Both the conversion and the conspiracy claims turn on the proposition that the Tressels did not hold the account as joint tenants with the right of survivorship. On cross-motions for summary judgment, the trial court granted defendants' motions, implicitly denied plaintiff's motion, and entered judgment for defendants.

On appeal, the dispute centers, as it did below, on whether the account complied with ORS 105.920, which specifies the terms on which persons may hold personal property as joint tenants with rights of survivorship. The statute provides:

---

[2] Jordan's affidavit states:

"At the direction of the decedent and Kathryn M. Tressel, a brokerage account was established as account No. 865-0313-1-6. This account was in the name of decedent and Kathryn M. Tressel as joint tenants with right of survivorship pursuant to their directions. When this account was established, the decedent specifically told me that the account was to be in his name and Kathryn M. Tressel's name as joint tenants with rights of survivorship."

"There shall be a form of coownership of personal property known as joint tenancy. A joint tenancy shall have the incidents of survivorship and severability as at common law. A joint tenancy may be created only by a written instrument which expressly declares the interest created to be a joint tenancy. It may be created by a transfer or bequest from a sole owner to others, or to the sole owner and others; or from tenants in common or joint tenants to others, or to themselves or some of them, or to themselves or any of them and others; or from husband and wife, when holding title as community property or otherwise, to others, or to themselves, or to one of them and to another or others. A transfer or bequest creating a joint tenancy shall not derogate from the rights of creditors."

Plaintiff advances three arguments to show either why the account did not comply with the statutory requirements or why summary judgment is not appropriate. Plaintiff argues initially that the Customer Holding Sheet does not constitute a "written instrument" within the meaning of ORS 105.920 because written instruments must be signed to be effective. It claims alternatively that defendants cannot rely on internal brokerage documents that the Tressels may never have seen to establish the necessary writing. Finally, plaintiff argues that there are factual disputes that preclude summary judgment. We address each argument in turn.

■ Three requirements are clear from the text of ORS 105.920. First, a joint tenancy may not be created orally; rather, it may be created "only by a written instrument." Second, the written instrument must "expressly declar[e]" that the interest created is a joint tenancy. Third, the express declaration must be contained in the written instrument that creates or is part of the process of creating the joint tenancy. *See Estate of Leda Mae Grove v. Selken*, 109 Or App 668, 673-74, 820 P2d 895 (1991), *rev den* 312 Or 676 (1992) (requiring both a writing and acts creating the joint tenancy).

■ Plaintiff does not dispute that the initials "JTWROS" that Jordan placed next to the Tressels' names on the Customer Holding Sheet constitute an express declaration that the Tressels intended to hold their account as joint tenants with rights of survivorship. Rather, plaintiff's argument

turns primarily on the proposition that the Customer Holding Sheet cannot be a "written instrument" because no one signed it. Plaintiff's argument is at odds with the text of ORS 105.920. By its terms, ORS 105.920 requires a writing. It does not require a signed writing. Financial institutions may often ask for a signed writing in order to avoid the sort of questions that have arisen in this case. The statute, however, does not require that they do so, and we may not add what the legislature has omitted. *See Clackamas County v. Gay,* 146 Or App 706, 710-11, 934 P2d 551, *rev den* 325 Or 438 (1997).[3]

■      Plaintiff advances a second argument. It says that the customer holding sheet was merely an "internal accounting documen[t] created by Jordan and [Jones & Co.]" that the Tressels may never have seen. To the extent that plaintiff argues that the sheet Jordan filled out did not reflect the Tressels' wishes, the uncontradicted evidence establishes that Jordan completed the sheet at the Tressels' direction. To the extent that plaintiff argues that the customer holding sheet is not the written instrument that created the joint tenancy, the evidence shows that Jordan filled out the customer holding sheet at the Tressels' direction as part of the process of opening their account. The sheet sets out the account number for the Tressels' account, their address, and their taxpayer identification numbers. It specifies the terms on which the account will be held, and it includes the initials JTWROS to show that the Tressels held the account as joint tenants with rights of survivorship.

On this record, the only reasonable conclusion that can be drawn is that the Customer Holding Sheet was the written instrument by which the Tressels created the joint tenancy. It was the document that Jordan prepared at their

---

[3] Plaintiff argues that two Oregon cases that preceded the enactment of ORS 105.920 are part of that statute's context and show that a signed writing is necessary. *See Manning v. U.S. Nat. Bank,* 174 Or 118, 148 P2d 255 (1944); *Beach v. Holland,* 172 Or 396, 142 P2d 990 (1943). Although both cases considered whether a signed writing created a joint tenancy with rights of survivorship, the focus in both cases was on what the writing said, not whether it was signed. Moreover, because ORS 105.920 was modeled on a Washington statute, *see* RCW 64.28.010, the cases that provide relevant context are Washington Supreme Court decisions that interpreted that state's statute before Oregon enacted ORS 105.920. *See State v. Cooper,* 319 Or 162, 168-69, 874 P2d 822 (1994).

direction to open their account and to show that any assets placed in their account would be held as joint tenants with the right of survivorship.[4] As such, it is sufficient to satisfy the requirements of ORS 105.920.

■        Plaintiff argues finally that there are disputed issues of fact that preclude summary judgment. Plaintiff relies initially on an affidavit from James Tressel's first wife, which states that James had agreed as a condition of their divorce to give their children the proceeds from the sale of their Los Gatos home. Plaintiff argues that the first wife's affidavit creates a factual question whether James intended to transfer the assets in the account to Kathryn rather than the children. There was no evidence, however, that the assets James and Kathryn placed in the joint account were the proceeds from the sale of the Los Gatos home, although there was evidence that James had also set up a separate account at Jones & Co. that he intended to go to his children. In the absence of any connection between the proceeds from the sale and the assets in the Tressels' joint account, the first wife's affidavit does not create a genuine issue of material fact, assuming that it would otherwise do so.

Plaintiff also relies on its counsel's affidavit that plaintiff would call an expert who would dispute Jordan's statement "that there is no need to have the prospective joint tenants with right of survivorship execute a written instrument to establish their intention to create a JTWROS account." It appears that plaintiff's expert would have testified about the legal requirements for creating a joint tenancy with rights of survivorship. Even if the meaning of a law is a proper subject of expert testimony, it would not create a genuine issue of fact that would preclude summary judgment. On this record, the trial court correctly granted defendants' summary judgment motions.

---

[4] In *Jacobs v. Jacobs*, 82 Or App 333, 339-40, 728 P2d 89 (1986), we held that an account statement made out to "Mr. Clifford C. Jacobs and Mrs. Helen I. Jacobs JTWROS" was sufficient evidence that the parties had created a joint tenancy with rights of survivorship under ORS 105.920. We appear to have viewed the account statement as evidence of the written instrument contemplated by ORS 105.920, not the written instrument itself. *See id.* We need not revisit *Jacobs* to resolve this case. The record that was created in this case establishes that the Customer Holding Sheet Jordan filled out at the Tressels' direction was a written instrument within the meaning of the statute.

Affirmed.

**ARMSTRONG, J.,** dissenting.

I disagree with the majority's conclusion that there is no genuine factual dispute that the Customer Holding Sheet satisfies the requirements imposed by ORS 105.920 to create a joint tenancy with a right of survivorship. By its terms, ORS 105.920 allows for the creation of joint tenancies in personal property with the incidents of survivorship and severability as at common law. It further provides, however, that such a joint tenancy can be created *only* by a written instrument that *expressly declares* the interest created to be a joint tenancy. It further provides that such joint tenancies can be created by transfer or bequest

"from a sole owner to others, or to the sole owner and others; or from tenants in common or joint tenants to others, or to themselves or some of them, or to themselves or any of them and others; *or from husband and wife, when holding titles as community property or otherwise, to others, or to themselves*, or to one of them and to another or others."

(Emphasis added.)

Thus, under the statute, a husband and wife may elect to take personal property held in common and transfer that property to a joint tenancy but, in order to do that, there *must* be a written instrument that *creates* the joint tenancy and that expressly states that the interest created therein is a joint tenancy. The issue in this case is whether the "Customer Holding Sheet" created the joint tenancy or whether, instead, it is merely a third-party document that memorialized James and Kathryn Tressels' desire to create that interest. That issue is one of fact.

It is clear from the text of the statute that the instrument that creates the joint tenancy must itself be created by the parties who direct its creation.[1] That does not mean that

---

[1] The majority acknowledges that in *Jacobs v. Jacobs*, 82 Or App 333, 728 P2d 89 (1986), we held that an account statement with the notation JTWROS was sufficient evidence of a joint tenancy under ORS 195.920. 162 Or App at 194. In reaching that conclusion, we did not focus on the language of ORS 105.920. *See Jacobs*, 82 Or App at 339-40. When we interpret a statute, our purpose is to effectuate the intent of the legislature. *PGE v. Jungwirth Logging, Inc.*, 151 Or App 789, 792, 951

it must be handwritten and signed by them but, rather, that however it was created, it was created at their direction. In other words, an agent of those who create the joint tenancy can create the written instrument required by ORS 105.920.[2] The question, then, is whether Jordan was acting as an agent for the Tressels when he filled out the "Customer Holding Sheet" and whether the act of filling out that sheet constituted the creation of the joint interest. If Jordan were acting as an agent not for the Tressels but, rather, for Jones, then the holding sheet would not reflect the Tressels' intent to create a joint tenancy but, instead, Jones's understanding that the Tressels desired to create a joint tenancy. In other words, it would merely memorialize the oral statements by the Tressels of their intention to create the joint tenancy.

The majority states that the uncontroverted evidence establishes that Jordan completed the documents at the Tressels' direction. However, the evidence does not

---

P2d 1101 (1997), *rev den* 327 Or 432 (1998). When the language of the statute is clear and unambiguous, we need look no further to discern that intent. *PGE v. Bureau of Labor & Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). By its terms, ORS 105.920 allows for the creation of joint tenancies in personal property with the incidents of survivorship and severability as at common law. It further provides, however, that such a joint tenancy can be created *only* by a written instrument that *expressly declares* the interest created to be a joint tenancy. As the trial court here concluded, under the ruling in *Jacobs*, the various documents presented by defendants would satisfy the statute. The majority states, however, that we need not revisit *Jacobs* in order to decide this case. I disagree. Unless we were to hold that *Jacobs* was wrongly decided, there is no reason for this court to engage in the exercise of determining whether the Customer Holding Sheet was a written instrument expressly declaring the interest therein created to be a joint tenancy. Accordingly, to the extent that *Jacobs* can be read to mean that nothing more than a notation of JTWROS on an account statement is necessary to establish that the account is a joint tenancy account with rights of survivorship, *Jacobs* is wrong and must be overruled. I realize that 13 years have passed since our decision in *Jacobs* and that parties may have relied on it in structuring their relationships. I further recognize that the doctrine of *stare decisis* militates against reversing *Jacobs* precisely because of that reliance. "However, the rule of *stare decisis* has never prevented Oregon appellate courts from reversing precedent that was 'inadequately considered or wrong when it was decided.' *See Heino v. Harper*, 306 Or 347, 373, 759 P2d 253 (1988)." *Mathel v. Josephine County*, 122 Or App 424, 428, 858 P2d 450 (1993) (Deits, J., dissenting), *rev'd* 319 Or 235, 875 P2d 455 (1994).

[2] There is nothing in the text of the statute to suggest that the instrument must be signed by the donor or donors, or that it cannot be prepared by an agent of the donor or donors. Accordingly, it does not matter whether the document at issue was signed by James and Kathryn Tressel, if there is evidence that it actually created the joint tenancy and was prepared by someone acting as the Tressels' agent to prepare it at the Tressels' request.

resolve the factual issues of whether the Customer Holding Sheet *created* the joint tenancy in the brokerage account and whether Jordan acted as an agent for the Tressels, for Jones, or for both, when he prepared that document. Because neither defendants nor plaintiff provided the court with evidence on which to resolve those questions of fact, the questions remain. Accordingly, summary judgment for either party on plaintiff's second claim was inappropriate.